STATE of Wisconsin, Plaintiff-Respondent,

v.

Ronald Arthur SMITH, Defendant-Appellant.†

Court of Appeals

*Nos. 81–121–CR, 81–122–CR. Submitted on briefs October 28, 1981.*
*—Decided January 18, 1982.*
(Also reported in 316 N.W.2d 124.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the brief of *Charles Bennett Vetzner,* chief state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Stephen W. Kleinmaier,* assistant attorney general.

Before Voss, P.J., Brown and Scott, JJ.

VOSS, P.J.    In this case, we are called upon to decide a single point.    At issue is whether a trial court has the

authority to designate the maximum level of inpatient facility as part of a reexamination hearing held pursuant to sec. 971.17 (2), Stats. We agree with the trial court that it has no such authority and affirm its decision.

In 1974, a trial court found Ronald Smith not guilty of criminal charges by reason of mental disease or defect. The trial court committed Smith to the Department of Health and Social Services, and the Department placed Smith in Central State Hospital. Smith petitioned for a reexamination hearing on September 27, 1980. At a pretrial conference, Smith's attorney notified the court that Smith did not wish to contest the issue of dangerousness. Rather, Smith's attorney only requested that the court make a determination on the maximum level of inpatient facility. He contended that sec. 51.20 (13) (c) 2, Stats.,[1] gave the trial court the authority to redetermine

---

[1] Section 51.20 (13), Stats., in pertinent part declares:

(13) DISPOSITION. (a) At the conclusion of the proceedings the court shall:

1. Dismiss the petition; or

2. If the subject individual is an adult, or is a minor aged 14 years or more who is developmentally disabled, proceed under s. 51.67 to determine whether the subject individual should receive protective placement; or

3. If the allegations specified in sub. (1) (a) are proven, order commitment to the care and custody of the appropriate board under s. 51.42 or 51.437, or if inpatient care is not required order commitment to outpatient treatment under care of such board; or

4. If the allegations specified in sub. (1) (a) are proven, order commitment to the department if the person was or is to be transferred from a state correctional facility or jail under s. 51.37; or

5. If the allegations specified in sub. (1) (a) are proven and the subject individual is a nonresident, order commitment to the department.

(b) If the petition has been dismissed under par. (a), the subject individual may agree to remain in any facility in which he or she was detained pending the hearing for the period of time necessary for alternative plans to be made for his or her care.

the maximum level of inpatient facility. The district attorney, at that point, completely agreed. The trial court offered no opinion whether or not it possessed such authority.

On June 17, 1980, S.W. Kayute, a doctor at Central State Hospital, informed the trial court that the hospital staff had reevaluated Smith and recommended that Smith be placed at a different facility. The staff had recommended its feeling that there would be a therapeutic benefit in exposing Smith to new programs and new people.

The trial court held a hearing on July 3, 1980 to determine the sole issue of whether Smith should be transferred from Central State Hospital to another less restrictive facility. At the hearing, it received evidence that recommended Smith's transfer to Mendota. The trial court expressed a reluctance to order transfer and held the matter open for thirty to forty-five days to allow a possible transfer to be made through the Department of Health and Social Services.

The Department denied Smith's transfer. Consequently, the hearing on Smith's transfer reconvened on August 25, 1980. At that time, for the first time in the hearing process, the district attorney expressed doubt about the court's power to order transfer. This doubt occurred after a Department of Health and Social Services attorney, Paul Harris, talked to him. Harris addressed the court on this issue. He argued that sec. 51.20(13)(a), Stats., did not refer to the Department of Health and So-

---

(c) If disposition is made under par. (a)3:

1. The court shall designate the facility or service which is to receive the subject individual into the mental health system;

2. The community board under s. 51.42 or 51.437 shall arrange for treatment in the least restrictive manner consistent with the requirements of the subject individual in accordance with a court order designating the maximum level of inpatient facility, if any, which may be used for treatment; and

. . . .

cial Services. Consequently, he contended that the trial court must revert back to sec. 971.17(2), Stats.,[2] to determine the extent of its authority to act in reexamination hearings. Because the section does not grant the trial court the authority to determine the maximum level of inpatient facility, the Department argued that the court had no such authority.

The uncontradicted expert testimony presented at the hearing indicated that a transfer to Mendota would be likely to improve Smith's chances of recovery. The testimony also indicated that Smith was a potential escape risk, and his chances of recovery were not good. Mendota offered no additional services that Central State did not provide.

Burton Wagner, the Department administrator who ultimately refused to transfer Smith, stated the reasons why the Department did not transfer Smith. He felt that Smith was a potential escape risk.[3] Additionally, he stated that staffing and population pressures were two factors which contributed to the decision not to transfer Smith.[4] The trial court ruled that it had no statutory

---

[2] Section 971.17(2), Stats., declares:

(2) A reexamination of a defendant's mental condition may be had as provided in s. 51.20(16), except that the reexamination shall be before the committing court and notice shall be given to the district attorney. The application may be made by the defendant or the department. *If the court is satisfied that the defendant may be safely discharged or released without danger to himself or herself or to others, it shall order the discharge of the defendant or order his or her release on such conditions as the court determines to be necessary. If it is not so satisfied, it shall recommit him or her to the custody of the department.* [Emphasis added.]

[3] At a prior time, Smith had been a patient at Mendota before the criminal charges were brought against him in 1974. While Smith was a patient, he attempted three escapes in a three-year period.

[4] The decision not to transfer Smith was a break from routine. Staff members at Central State indicated that Smith was the

authority to determine the maximum level of inpatient facility for Smith.

On appeal, Smith argues that the court has the statutory authority to set the maximum level of inpatient facility. His argument is based upon the following statutory argument. Section 971.17(2), Stats., states that the reexamination hearing "may be had as provided in sec. 51.20(16), Stats."[5] Section 51.20(16)(g), Stats., states

first person who was *not* transferred after they had recommended transfer.

[5] Section 51.20(16), Stats., states in pertinent part:

(16) REEXAMINATION OF PATIENTS. (a) Except in the case of alcoholic commitments under s. 51.45(13), any patient who is involuntarily committed for treatment under this chapter, may on the patient's own verified petition, except in the case of a minor who is under 14 years of age, or on the verified petition of the patient's guardian, relative, friend, or any person providing treatment under the order of commitment, request a reexamination or request the court to modify or cancel an order of commitment.

(b) A petition under this subsection may be filed with the court assigned to exercise jurisdiction over probate matters, either for the county from which the patient is committed or for the county in which the patient is detained.

(c) If a hearing has been held with respect to the subject individual's commitment within 30 days of the filing of a petition under this subsection, no hearing shall be held. If such a hearing has not been held within 30 days of the filing of a petition, but has been held within 120 days of the filing, the court shall within 24 hours of the filing order an examination to be completed within 7 days by the appropriate board under s. 51.42 or 51.437. A hearing may then be held in the court's discretion. If such a hearing has not been held within 120 days of the filing, a hearing shall be held on the petition within 30 days of receipt.

(d) Reexaminations under this subsection are subject to the standards prescribed in sub. (13)(g).

(e) If the court determines or is required to hold a hearing, it shall thereupon proceed in accordance with sub. (9)(a). For the purposes of the examination and observation, the court may order the patient confined in any place designated in s. 51.15(2).

that "[s]ubsections (10) to (13) shall govern the procedure to be used in the conduct of the hearing insofar as applicable." The pertinent part of subsections (10) through (13), sec. 51.20(13)(c)2, Stats., declares: "The community board under s. 51.42 or 51.437 shall arrange for treatment in the least restrictive manner consistent with the requirements of the subject individual *in accordance with a court order designating the maximum level of inpatient facility,* if any, which may be used for treatment . . . ." (Emphasis added.) This, Smith contends, tracks the statutory justification for allowing the court to determine the maximum level of inpatient facility. We are not convinced by Smith's argument.

Section 51.20(16)(g), Stats., declares that sec. 51.20 (13), Stats., "shall govern the procedure to be used in the conduct of the hearing, *insofar as applicable.*" (Emphasis added.) The plain language of sec. 51.20(13)(c) 2, Stats., indicates that it could not be applicable to a criminal commitment. The statute directs the *community board* to arrange for treatment in the least restrictive manner in accordance with what the court orders to be the maximum level of inpatient facility.

The community board only arranges for treatment in civil commitments, not criminal commitments. Section

---

(f) If a patient is involuntarily committed and placed in a hospital, a notice of the appointment of the examining physicians and copies of their reports shall be furnished to such hospital by the court.

(g) Upon the filing of the examiners' reports the court shall fix a time and place of hearing and cause reasonable notice to be given to the petitioner, the treatment facility, the patient's legal counsel and the guardian of the patient, if any, and may notify any known relative of the patient. Subsections (10) to (13) shall govern the procedure to be used in the conduct of the hearing, insofar as applicable. The privileges provided in ss. 905.03 and 905.04 shall apply to reexamination hearings.

971.17(1), Stats.,[6] clearly expresses that the Department of Health and Social Services determines treatment in criminal commitment cases. Nothing in the statutes expresses the intent that the court gains the power to determine the maximum level of inpatient facility in a reexamination hearing when it does not have it in the first instance.

Section 51.20(13), Stats., itself, makes a distinction between commitments to the board and commitments to the Department of Health and Social Services. Sections 51.20(13)(a)4 and 51.20(13)(a)5, Stats., both specifically refer to conditions when the court may commit a person to the department. Because the legislature showed the awareness of the difference between referrals to the board and referrals to the department, the only conclusion which may be drawn is that sec. 51.20(13)(c)2, Stats., was not intended to apply to criminal commitments.

Further, sec. 51.20(13)(c)2, Stats., is not applicable because sec. 971.17(2), Stats., specifically indicates the options a court has at the end of a reexamination hearing. It may discharge the defendant completely, it may discharge the defendant on such conditions as the court determines to be necessary or it may recommit the defendant to the custody of the department. These are the only options available to the court at the termination of a sec. 971.17(2), Stats., hearing.

This interpretation is consistent with case law which discussed the cross-referencing between chs. 971 and 51.

---

[6] Section 971.17(1), Stats., declares: "When a defendant is found not guilty by reason of mental disease or defect, the court shall order him to be committed to the department to be placed in an appropriate institution for custody, care and treatment until discharged as provided in this section."

In *State v. Gebarski,* 90 Wis. 2d 754, 280 N.W.2d 672 (1979), the Wisconsin Supreme Court specifically held that sec. 51.20, Stats., applies to sec. 971.17(2), Stats., hearings only "insofar as applicable." *Id.* at 763–65, 280 N.W.2d at 675–76. Where the language of sec. 51.20, Stats., conflicts with the more specific language of sec. 971.17(2), Stats., the more specific language applies. *See State v. Neitzel,* 95 Wis. 2d 191, 200, 289 N.W.2d 828, 833 (1980); *Schlosser v. Allis-Chalmers Corp.,* 65 Wis. 2d 153, 161, 222 N.W.2d 156, 160 (1974).

The court expressed the same preference for the application of the specific criminal statutes over sec. 51.20, Stats., in *State v. Hungerford,* 84 Wis. 2d 236, 267 N.W. 2d 258 (1978). There the court held: "[I]t is clear that the legislature did not intend all of the provisions of the civil commitment statute relating to reexamination of a civilly committed person to apply to hearings for the extension of control over a sexual deviate." *Id.* at 250, 267 N.W.2d at 266. This is precisely the situation in the case in point.[7] We hold that the trial court does not have the power to order the maximum level of inpatient facility in a sec. 971.17(2), Stats., reexamination hearing.

Smith contends that even if no statutory basis for a formal hearing on placement exists, the patients have a

---

[7] Smith argues that the amendment to sec. 51.20(16), Stats., which added subsection (j) altered the decisions in *Gebarski* and *Hungerford.* Section 51.20(16)(j), Stats., states: "This subsection applies to petitions for reexamination which are filed under chs. 971 and 975, except that the petitions shall be filed with the committing court." Smith contends that subsection (j) is designed to make all of sec. 51.20(16), Stats., and its incorporated sec. 51.20(13), Stats., applicable to sec. 971.17(2), Stats., reexamination hearings. Such an interpretation would overrule the decisions in *Gebarski* and *Hungerford.* However, the legislative history of sec. 51.20(16)(j), Stats., shows that this subsection was added to prevent forum shopping for a sympathetic court.

constitutional right to such a hearing. He argues that
ch. 971 creates a right to treatment which cannot be de-
nied without the due process protection of a hearing.
Smith argues that sec. 51.61, Stats., guarantees this
right,[8] and the trial court may determine whether this
right has been violated at a sec. 971.17(2), Stats., reex-
amination hearing. We do not agree.

If Smith feels his right to treatment has been violated,
he may either institute a grievance pursuant to sec. 51.-
61(5), Stats.,[9] or bring an action for damages pursuant
to sec. 51.61(7), Stats.[10] However, a reexamination

---

[8] Specifically, Smith seems to argue that his rights established
under sec. 51.61(1)(f), Stats., are violated. That section de-
clares that each patient shall "[h]ave a right to receive prompt
and adequate treatment, rehabilitation and educational services
appropriate for his or her condition."

[9] Section 51.61(5), Stats., declares:

(a) The department shall establish procedures to assure pro-
tection of patients' rights guaranteed under this chapter, and
shall implement a grievance procedure to assure that rights of
patients under this chapter are protected and enforced by the
department, by service providers and by boards established under
ss. 51.42 and 51.437. The procedures established by the depart-
ment under this subsection do not apply to patients in private
hospitals or public general hospitals except for patients who are
admitted through the department or a board established under
s. 51.42 or 51.437, or who are admitted in accordance with a
written agreement between the hospital and the department or
such a board.

(b) Each private hospital or public general hospital receiving
patients who are subject to this section shall establish a griev-
ance procedure to assure the protection of patients' rights under
this section.

[10] Section 51.61(7), Stats., declares:

(a) Any patient whose rights are protected under this section
who suffers damage as the result of the unlawful denial or viola-
tion of any of these rights may bring an action against the
person, including the state or any political subdivision thereof,
which unlawfully denies or violates the right in question. The

hearing is not intended to provide a tool for the patient to contest the treatment he has received.'' The hearing is designed so that the patient may contest whether future treatment is needed. Use of the grievance procedure or instituting an action in court on the treatment received provides adequate due process protection. Consequently, we believe no due process violation exists here.

*By the Court.*—Order affirmed.

individual may recover any damages as may be proved, together with exemplary damages of not less than $100 for each violation and such costs and reasonable actual attorney fees as may be incurred.

(b) Any patient whose rights are protected under this section may bring an action against any person, including the state or any political subdivision thereof, which wilfully, knowingly and unlawfully denies or violates any of his or her rights protected under this section. The patient may recover such damages as may be proved together with exemplary damages of not less than $500 nor more than $1,000 for each violation, together with costs and reasonable actual attorney fees. It is not a prerequisite to an action under this paragraph that the plaintiff suffer or be threatened with actual damages.

(c) Any patient whose rights are protected under this section may bring an action to enjoin the unlawful violation or denial of rights under this section and may in the same action seek damages as provided in this section. The individual may also recover costs and reasonable actual attorney fees if he or she prevails.

(d) Use of the grievance procedure established under sub. (5) is not a prerequisite to bringing an action under this subsection.

'' This does not mean, however, that the patient may not contest the treatment he is receiving. He may do that in another proceeding which he chooses to bring. Should the patient institute an action pursuant to sec. 51.67(7), Stats., the patient would have the opportunity to a full trial on whether he is receiving the treatment he deserves.