184 Wis.2d 860 (1994)
517 N.W.2d 144
IN the MATTER OF the APPOINTMENT OF an INTERPRETER IN STATE
v.
Tai V. LE:
STATE PUBLIC DEFENDER, Appellant
v.
CIRCUIT COURT, BRANCH 11, DANE COUNTY, Respondent.
No. 93-1351-CR.
Supreme Court of Wisconsin.
Oral argument February 3, 1994.
Decided June 20, 1994.
*862 For the appellant there were briefs and oral argument by Mark Lukoff, first assistant state public defender.
For the respondent the cause there was a brief by James H. McDermott, assistant attorney general, with whom on the brief was James E. Doyle, attorney general, and oral argument by Michelle Ramirez, assistant attorney general.
DAY, J.
This court granted a petition to bypass in this case, pursuant to sec. (Rule) 809.60, Stats. The State Public Defender (SPD) filed the petition to bypass in an appeal of a portion of an order entered in the Circuit Court, Dane County, Honorable Daniel R. Moeser, judge, by which the SPD was ordered to compensate an interpreter for defense counsel's use out-ofcourt *863 in the case State v. Tai V. Le, Dane County Circuit Court, Case No. 93-CF-500.[1]
The Director of State Courts (DSC) was required in the same order to pay the costs of the interpreter for in court use. That portion of the order is not challenged. The SPD, however, claims that the DSC must pay for out-of-court use as well. The DSC denies such an obligation, and is supported on this appeal by the Attorney General.
The sole question on appeal is whether the SPD or the DSC is responsible for paying for an interpreter appointed for defense counsel's out-of-court use. We affirm the order of the circuit court.
This case presents a question of statutory interpretation, and is limited to that question. We emphasize that we are not addressing in any way the substantive right to have an interpreter provided at public expense. That issue is settled law and is not before us here. This case is limited to the dispute over accounting, namely, which state agency is supposed to pay for out-of-court costs of appointed interpreters under the statutes.
[1, 2]
The interpretation of statutes is a question of law which appellate courts review without deference to the trial court. State v. Wittrock, 119 Wis. 2d 664, 669, 350 N.W.2d 647 (1984) (citations omitted). In construing any statute, the court first looks to the language of the statute.
*864 [3]
The principal statutes involved in this case are sec.885.37, Stats., and sec. 20.625, Stats. Section 885.37 provides in relevant part:
885.37 Interpreters for persons with language difficulties or hearing or speaking impairments. (1) (a) If a court has notice that a person fits any of the following criteria, the court shall make the determinations specified under par. (b):
1. The person is charged with a crime.
2. The person is a child or parent subject to ch. 48.
3. The person is subject to ch. 51 or 55.
4. The person is a witness in an action or proceeding under subd. 1, 2 or 3.
(b) If a court has notice that a person who fits any of the criteria under par. (a) has a language difficulty because of the inability to speak or understand English, has a hearing impairment, is unable to speak or has a speech defect, the court shall make a factual determination of whether the language difficulty or the hearing or speaking impairment is sufficient to prevent the individual from communicating with his or her attorney, reasonably understanding the English testimony or reasonably being understood in English. If the court determines that an interpreter is necessary, the court shall advise the person that he or she has a right to a qualified interpreter and that, if the person cannot afford one, an interpreter will be provided for him or her at the public's expense. Any waiver of the right to an interpreter is effective only if made voluntarily in person, in open court and on the record ....
*865 (4) (a) The necessary expense of furnishing an interpreter for an indigent person under sub. (1) or (2) shall be paid as follows:
1. In the supreme court or the court of appeals, the state shall pay the expense.
2. In circuit court, the state shall pay the expense.
3. In municipal court, the municipality shall pay the expense.
Section 20.625 provides in relevant part:
20.625 Circuit courts. There is appropriated to the director of state courts for the following programs:
(1) COURT OPERATIONS....
(c) Court interpreter fees. The amounts in the schedule to pay interpreter fees under s. 885.37(4)(a)2.
Since the latter statute refers to the former specifically, we construe the two statutes together. State v. Newman, 162 Wis. 2d 41, 47, 469 N.W.2d 394 (1991).
The present controversy arose when the defendant in this case, Tai V. Le, was charged with a felony in circuit court in Dane County. Tai V. Le is indigent and was provided with trial counsel through the SPD. However, since Tai V. Le's speaks Vietnamese and does not understand English Well, his appointed counsel was unable to communicate with him. Appointed counsel therefore requested that the SPD provide him with an interpreter. The SPD, however, refused the attorney's request to pay for an interpreter.
At that point Tai V. Le's counsel moved the circuit court to appoint an interpreter under sec. 885.37, Stats., or, in the alternative, to relieve the attorney from the case because he did not speak Vietnamese and *866 the SPD had refused to authorize the attorney to retain an interpreter at the SPD's expense.
The circuit court, following sec. 885.37(1)(b), Stats., held a hearing and determined that the requirements of the statute had been met in that "defendant Tai V. Le has an inability to speak or understand English because Le's native language is Vietnamese, and that Le is indigent." The circuit court ordered that Tai V. Le have an interpreter appointed.
The court also specified in the order how the expenses of the interpreter would be distributed. As noted above, the court assigned the in-court interpreter expenses to the DSC and assigned the out-of-court interpreter expenses to the SPD. Both parties agree that the DSC must cover the in-court expenses. The SPD appeals the portion of the order that assigns the out-of-court costs.
The SPD brought the appeal and phrased the question on appeal as follows: "Who pays for an interpreter appointed for defense counsel's use out-of-court, the State Public Defender or the Director of State Courts?" We determine that the DSC is not obligated for these expenses. That leaves the SPD as the entity that pays.
The DSC acknowledges that it is responsible for the costs of interpreters in-court, but denies that it is obligated to cover the out-of-court costs of interpreters. It bases its argument on the interaction of secs. 885.37 and 20.625, Stats. The DSC argues that sec. 885.37, Stats., was designed to address the provision of interpreters in court (or before an agency). This is evidenced, the DSC argues, in sec. 885.37(4)(b), Stats., which allocates the expenses to the state, the DSC, only for interpreters furnished "In circuit court, ..." (emphasis supplied), and sec. 20.625, Stats., which *867 authorizes the expenses only as to "court operations" and speaks only of "court" interpreters. From this the DSC concludes that it is responsible only for in-court expenses of furnishing interpreters and that others are responsible for the use of interpreters out-of-court. The Attorney General, writing for the DSC, shares this view. We agree.
[4, 5]
A statute is ambiguous if it is capable of being understood by reasonably well-informed persons to have two or more different meanings. Ervin v. City of Kenosha, 159 Wis. 2d 464, 472, 464 N.W.2d 654 (1991). Both the SPD and the DSC argue that "a plain reading" of these statutes supports their respective positions. We therefore consider these statutes ambiguous, and turn to the legislative history to discern the legislative intent behind the words.[2]
The obligation to provide interpreters originated in State v. Neave, 117 Wis. 2d 359, 344 N.W.2d 181 (1984). This court held in Neave, at 375, that:
"[w]henever a trial court is put on notice that the accused [a criminal defendant in that case] has a language difficulty, the court must make a factual determination of whether the language disability is sufficient to prevent the defendant from communicating with his [or her] attorney or reasonably understanding the English testimony at the preliminary hearing or trial. If the court determines that an interpreter is necessary, it must make certain that the defendant is aware that he [or she] has a right to an interpreter and that an interpreter will be provided for him [or her] if he [of she] cannot *868 afford one. Any waiver of the right to an interpreter must be made voluntarily in open court on the record." Neave, at 375 (footnote omitted).
The court held further that this obligation should be provided "at public expense," but did not specify how the costs should be allocated. Neave, at 366. The next step was taken in the legislature.
The obligation outlined in Neave was codified in sec. 885.37, Stats., which was repealed and recreated with the express purpose of implementing the holding in Neave. The original draft legislation was submitted to the Legislature by the DSC shortly after the decision in Neave and featured language taken directly from the opinion. The draft legislation became 1985 Assembly Bill 622 and, with minor modifications, became law with the passage of 1985 Wisconsin Act 266, sec. 3. The Analysis by the Legislative Reference Bureau states explicitly that the purpose of sec. 885.37, Stats., was to make the law "[c]onsistent with the decision in State v. Neave...." Legislative Reference Bureau Drafting File, 1985 Wis. Act 266, 1985 AB 622.
[6, 7]
We find this significant for two reasons. First, it heightens the persuasiveness of the DSC's interpretation of this legislation, both as to its intent and its operation. Of course, the interpretation by the author or sponsor of legislation is not binding on this court's interpretation of legislative enactments. See, Tucker v. Marcus, 142 Wis. 2d 425, 433-434, n.2, 418 N.W.2d 818 (1988). Nor are comments by an agency affected by legislation or charged with implementing legislation binding on this court's interpretations of those legislative enactments. See, Kimberly-Clark Corp. v. Public Service Comm., 110 Wis. 2d 455, 466, 329 N.W.2d 143 (1983). However, the interpretations of authors or *869 sponsors or agencies may be persuasive and we will consider such information when useful and appropriate. See, State v. Lehman, 108 Wis. 2d 291, 304, n.9, 321 N.W.2d 212 (1982); State Historical Society v. Maple Bluff, 112 Wis. 2d 246, 254-255, 332 N.W.2d 792 (1983); Wisconsin Valley Imp. Co. v. Public Serv. Comm., 7 Wis. 2d 120, 124-125, 95 N.W.2d 767 (1959).
Second, the fact that this legislation was explicitly intended to implement Neaveto the extent of taking language directly from the opinionprovides some parameters on the intended scope and operation of the legislation.
The SPD argues that Neave supports its interpretation. Neave held that the court must appoint an interpreter for a criminal defendant who "has a language difficulty" because he or she is unable to speak or understand English, when that language disability is "sufficient to prevent the defendant from communicating with his [or her] attorney." Neave, at 375. Taking this language almost verbatim from Neave, sec. 885.37(1)(b), Stats., dictates that the court must appoint an interpreter if the criminal defendant has "a language difficulty because of the inability to speak or understand English," which "is sufficient to prevent the individual from communicating with his or her attorney."
The SPD emphasizes that these phrases do not say "communicating with his or her attorney in-court." Nor should they, the SPD claims in its brief, because, "[o]ut-of-court communication between attorney and client are [sic] as vital to the constitutional right to effective assistance of counsel as is in-court communication."
The holding in Neave, however, was not that sweeping. We have no doubt that clarity in out-of-court communications between counsel and client is vital to *870 effective representation. Neave, however, was concerned with judicial administration and fairness in and before the forum itself. Neave, at 365, 373. The holding in Neave, at 361, 362, n.2., was explicitly limited to examining "the defendant's ability to understand the proceedings at trial." (Emphasis supplied.)
The court in Neave, at 362, n.2, lists three principal reasons why a non-English speaking criminal defendant needs an interpreter. The reasons given include: "(1) To translate during the defendant's testimony if he takes the stand; (2) to facilitate communication between the defendant and his English speaking attorney; and (3) to enable the defendant to reasonably understand the trial proceedings conducted in English." It is true that the court did not specifically say communications "in court." However, in the very next sentence in the footnote, the court made clear that it was referring only to the "proceedings at trial."
The focus in Neave on the proceedings and forum itself is apparent throughout the opinion. Neave referred to a number of state and lower federal courts which had addressed the question of whether there was a federal constitutional right to an interpreter in criminal cases. The cases listed in Neave, at 364, all involved rights exercised in and during the proceedings themselves (e.g. the right to confront one's accusers and cross-examine witnesses; the right to be present in the courtroom at every stage of the trial; and the right to have the proceedings translated). Clearly, this court's attention was focused on the proceedings themselves, i.e., that which takes place in the court.
The court's attention in Kropiwka v. DILHR, 87 Wis. 2d 709, 710, 275 N.W.2d 881 (1979), was likewise directed to what occurs in the proceedings and forum. In that case the question was whether the complainant *871 had been denied a full and fair hearing because he had not had an interpreter provided at the hearing. Finally, in Perovich v. United States, 205 U.S. 86 (1907), which was referred to for guidance in both Neave, at 363, and in Kropiwka, at 715, the question was whether the interpreter should have been appointed during testimony at the trial.
As to which state agency or level of government should pay for the interpreters' services, the court in Neave made no comment. We do note, however, that the funding scheme contained in the previous statute, and partly recreated in the present statute, placed the expense on "the unit of government for which such trial, examination, inquiry or consideration is held or made...." Neave, at 366, n.3. This supports the conclusion that the focus was on the proceedings and the forum, and also suggests that the legislature had placed the expenses on that agency or on that level of government which was using the services most directly.
Prior to 1985 it was apparently the counties which paid such expenses. When sec. 885.37(4)(a)2 was adopted in 1985, it continued to place the responsibility of paying for interpreters in circuit court on the counties. However, in 1987 the sec. 885.37(4)(a)2, Stats., was amended so that the "state" would assume those costs. 1987 Act 27 sec. 2170j. It was from that point that the DSC became clearly responsible for the incourt costs of interpreters. There have been no other changes in sec. 885.37, Stats., since that time, and there has been no reason to alter the analysis about the statute's focus on in- versus out-of-court expenses.
We agree that there are administrative and managerial reasons for placing the responsibility for the outof-court expenses upon the agency or level of government *872 which will be using the services most directly. It would appear that the SPD is best situated to monitor and supervise the use of interpreters in out-of-court situations in the course of its general representation. The DSC is, quite clearly, not equipped to do this. However, we emphasize that the question of which state agency or which level of government is best situated to cover such expenses and oversee such programs is a legislative and administrative question. The court's only concern is that the services be supplied. If an indigent person requires an interpreter, the interpreter should be supplied at "public expense." The substantive requirements of Neave and other relevant cases may be fulfilled without reference to which agency or level of government ultimately pays the bill, so long as the indigent is provided with the required services.
The SPD complains that it should not be forced to shoulder the costs of interpreters without receiving a specific appropriation to cover interpreters' fees. While we sympathize with the SPD's budgetary concerns, this argument assumes that such an appropriation would be (or has been) necessary before such expenses could be (or have been) supplied as part of the general representation services.
In its reply brief the SPD states quite unequivocally that "[t]he SPD never paid for interpreters." The record, however, displays only confusion on this issue. Apparently the appointment and compensation of interpreters has only recently been given any kind of sustained administrative attention. It is apparent from the correspondence between the DSC and SPD as this dispute was building that at least some interpreter fees have been paid by SPD offices. (See, e.g. Respondent's Appendix, p. 101.)
*873 The SPD has denied that this was so, but the SPD has failed to supply information which could have potentially clarified the question. In a footnote in its Reply Brief, the SPD claims that it could resolve the issue: "Even though it would be a monumental waste of time, the SPD notes that an [sic] remand for an evidentiary hearing would be required to prove this point, and prove it the SPD can." We note in this context, however, that it was the SPD who brought this appeal and petitioned this court for bypass. If a party has what it believes is dispositive evidence especially evidence which likely would be subject to judicial notice under sec. 902.01, Stats.it is incumbent upon that party to present such evidence. There was nothing preventing the SPD from placing even minimal budgetary or other relevant evidence in the record or in appendices.
At this point, however, we agree with the SPD that it would be "a monumental waste of time" to remand this case. As the SPD itself argues in its Reply Brief, evidence of past practice would not control the issue of statutory interpretation. We note that such evidence could have been instructive, had it been provided. However, we agree that evidence of past practice could not by itself resolve the statutory construction question because it might only confirm that the statute was misinterpreted.
[8]
We conclude that the DSC is responsible for the incourt cost of providing interpreter services under sec. 885.37, Stats., and the SPD is responsible for the outof-court use of such interpreters by SPD or SPDappointed defense counsel.
*874 By the Court.The decision of the circuit court is affirmed.
NOTES
[1] "IT IS ORDERED that the Court will appoint an interpreter for defendant's use in-court, the costs to be borne by the Director of State Courts pursuant to secs. 20.625(1)(c) and 885.37(4)(a)2., Stats.

"IT IS FURTHER ORDERED that the State Public Defender appoint and compensate, from its funds, an interpreter for defense counsel's use out-of-court."
[2] If the language of the statute is clear and unambiguous, then reference to extrinsic aids is unnecessary. State v. Derenne, 102 Wis. 2d 38, 45, 306 N.W.2d 12 (1981).