Richard THIELMAN, Plaintiff-Respondent,

v.

Joseph LEEAN, Laura Flood, Byran Bartow, James Doyle, State of Wisconsin and Wisconsin Resource Center, Defendants,

WISCONSIN DEPARTMENT OF HEALTH AND FAMILY SERVICES, Defendant-Appellant.

Court of Appeals

*No. 02–0888. Submitted on briefs September 10, 2002.—Decided January 23, 2003.*

2003 WI App 33

(Also reported in 659 N.W.2d 73.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Joely Urdan*, assistant attorney general.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Mary E. Kennelly* of *Fox & Fox, S.C.* of Madison.

Before Dykman, Roggensack and Lundsten, JJ.

¶ 1. ROGGENSACK, J. The Department of Health and Family Services (DHFS) appeals the circuit court's order enjoining DHFS from transporting Richard Thielman and similarly committed WIS. STAT. ch. 980 patients to and from treatment facilities such as

Wisconsin Resource Center (WRC) in full restraints without first making individualized determinations that restraints are needed during transport. The circuit court determined that DHFS's transportation policy for ch. 980 patients violated WIS. STAT. § 51.61(1)(i) (1999–2000).[1] Because we conclude that § 51.61(1)(i) grants broad discretionary power to DHFS sufficient to permit its treatment facilities to transport ch. 980 patients in restraints for security reasons and because there is nothing in the language of the statute that requires treatment facilities to exercise that discretion for each individual patient, rather than on the basis of its experience with ch. 980 patients as a group and the individualized prior finding of sexual dangerousness that each ch. 980 patient has had made, we reverse the circuit court's order.

## BACKGROUND

¶ 2. In May 1998, Richard Thielman was adjudicated a sexually violent person and committed to DHFS for control, care and treatment until such time as he is no longer sexually violent. WIS. STAT. § 980.06(1). This finding of being sexually violent was supported by proof beyond a reasonable doubt. WIS. STAT. § 980.05(3)(a). He was assigned to WRC.

¶ 3. Thielman has numerous health problems that require transporting him for medical treatment outside WRC on a regular basis. In accordance with WRC policy,[2] Thielman was temporarily placed in full restraints during the transports.

---

[1] All further references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

[2] The WRC policy provides that all ch. 980 patients are transported out of the institution in full restraints, which means handcuffs, waist belt, and leg irons.

¶ 4. In October 2000, Thielman sued DHFS for alleged violations of WIS. STAT. § 51.61,[3] on his own behalf and on behalf of all similarly situated patients committed under ch. 980. Thielman alleged that WRC's policy of transporting ch. 980 patients in full restraints violated his right to be free from physical restraints under § 51.61(1)(i) and his right to the least restrictive conditions necessary to achieve the purposes of commitment under § 51.61(1)(e). Both DHFS and Thielman moved for summary judgment. The circuit court granted judgment in Thielman's favor and permanently enjoined DHFS from transporting ch. 980 patients in full restraints, without first making individualized determinations that restraints are needed.

¶ 5. During the course of the proceedings, the legislature amended WIS. STAT. § 51.61(1)(i) to provide that patients detained or committed under ch. 980 may be restrained during transport for security reasons. Accordingly, DHFS moved for reconsideration of the permanent injunction on the grounds that the recent amendment clearly authorized WRC's restraint of ch. 980 patients during transport. The circuit court affirmed, but it amended its order to conclude that § 51.61(1)(i) provided the exclusive basis for the relief granted. DHFS appeals only the circuit court's order preventing future transports of ch. 980 patients in full restraints without prior individual determinations that restraints of the level used are necessary for the transport.

---

[3] The original suit also named Joseph Leean, Laura Flood, Bryan Barrow, James Doyle, State of Wisconsin and WRC as defendants. The circuit court dismissed those parties with prejudice, but without any preclusive effect on Thielman's ability to pursue his claims against DHFS. Therefore, DHFS is the named party in this appeal.

## DISCUSSION

**Standard of Review.**

¶ 6. We review questions of statutory interpretation *de novo*. *State v. Sveum*, 2002 WI App 105, ¶ 5, 254 Wis. 2d 868, 648 N.W.2d 496.[4] Additionally, whether a statute is ambiguous is a question of law that we review without deference to the circuit court. *Awve v. Physicians Ins. Co. of Wis., Inc.* 181 Wis. 2d 815, 822, 512 N.W.2d 216, 218 (Ct. App. 1994).

**WISCONSIN STAT. § 51.61(1)(i).**

¶ 7. Convicted sex offenders involuntarily detained or committed under ch. 980 are subject to certain provisions under both ch. 980 and ch. 51. *State v. Anthony D.B.*, 2000 WI 94, ¶ 11, 237 Wis. 2d 1, 614 N.W.2d 435. Additionally, they are entitled to patients' rights set forth in ch 51. *Id.* at ¶ 15. WISCONSIN STAT. § 51.61(1)(i) governs the use of restraints on mental health patients, including ch. 980 patients during transportation to and from treating facilities. The current statute provides in relevant part:

> Patients who have a recent history of physical aggression may be restrained during transport to or from the facility. . . . Patients who are committed or transferred

---

[4] We note that this case presents solely as a question of statutory interpretation, not as a constitutional challenge to the way in which the statute was applied. Thielman has already received an adverse decision concluding that he has no constitutional due process right involved in the mode of restraint used in transporting him because he has no liberty interest in an individualized determination as to whether he poses a safety or escape risk. *Thielman v. Leean*, 282 F.3d 478 (7th Cir. 2002).

259

under s. 51.35(3) or 51.37 or under ch. 971 or 975, *or who are detained or committed under ch. 980,* may be restrained for security reasons during transport to or from the facility. (2001–02) (italics added).[5]

■

¶ 8. DHFS argues that WIS. STAT. § 51.61(1)(i) permits the department's use of a blanket policy for transporting all ch. 980 patients in full restraints for security reasons. DHFS explains that it formulated its policy for ch. 980 patients based on prior individual determinations of dangerousness that courts have made in each case and its experience transporting ch. 980 patients that has shown the need to protect the public from danger during transports. We agree that § 51.61(1)(i) gives DHFS the authority to decide whether to use full restraints during transport and that it does not prohibit exercising this authority through a policy that covers all ch. 980 patients within its care.

■

¶ 9. The resolution of the scope of DHFS's authority during transport turns on the policies that underlie a ch. 980 commitment which policies inform our construction of the word "may" in WIS. STAT. § 51.61(1)(i). When we construe a statute, our aim is to determine the intent of the legislature. We do so by first examining the language of the statute itself. *Truttschel v. Martin,* 208 Wis. 2d 361, 365, 560 N.W.2d 315, 317 (Ct. App. 1997). As an initial matter, we must determine whether the

---

[5] 2001 Wis. Act. 16 § 1993r, effective Sept. 1, 2001, amended the final sentence of WIS. STAT. § 51.61(1)(i) by adding the italicized words. Because this version of § 51.61(1)(i) is now operative and because only the order permanently enjoining DHFS from using full restraints on ch. 980 patients in the future has been appealed, we will address only the current version of the statute.

statute is clear and unambiguous on its face or whether its language is capable of being understood by reasonably well informed persons in two or more ways. *Id.* When a statute is clear, generally we will not look beyond the language chosen by the legislature to determine legislative intent. *Doane v. Helenville Mut. Ins. Co.*, 216 Wis. 2d 345, 352, 575 N.W.2d 734, 736 (Ct. App. 1998). In so doing, we will interpret the statute based on "the plain meaning of its terms." *State v. Williquette*, 129 Wis. 2d 239, 248, 385 N.W.2d 145, 149 (1986). The underlying purpose of ch. 980 is to "treat the individual's mental illness and protect him and society from his potential dangerousness." *State v. Post*, 197 Wis. 2d 279, 308, 541 N.W.2d 115, 124 (1995) (citation omitted).

¶ 10. The parties focus on the meaning of the words "may be restrained for security reasons" in WIS. STAT. § 51.61(1)(i). The word "may" is generally construed as permissive or directory. *See State v. Sprosty*, 227 Wis. 2d 316, 325, 595 N.W.2d 692, 696 (1999); *City of Wauwatosa v. County of Milwaukee*, 22 Wis. 2d 184, 191, 125 N.W.2d 386, 389 (1963). The use of permissive language connotes a grant of discretionary power by the legislature to an authorized decision-maker. *Swatek v. County of Dane*, 192 Wis. 2d 47, 59, 531 N.W.2d 45, 50 (1995) ("[T]he use of the word 'may' implies a discretionary element."); *see also Miller v. Smith*, 100 Wis. 2d 609, 616, 302 N.W.2d 468, 471 (1981). Neither party disputes this basic principle. Where the parties diverge is in how the legislature intended DHFS to exercise its discretion.

¶ 11. Thielman first contends that the word "may" requires DHFS to exercise its discretion by deciding in each individual case how much restraint is needed for

security reasons during each individual transport. Under Thielman's construction, each patient would have to be evaluated prior to being transported to determine whether he has significant, little or no propensity for escape or injury to a staff member during the transport. Only then, according to Thielman, could DHFS lawfully exercise the discretionary authority granted by the legislature under WIS. STAT. § 51.61(1)(i). However, he cites no legal authority to support his contention that the word "may" does not permit discretionary security decisions to be based on prior individualized determinations of dangerousness for a class of patients and DHFS's own past experience with ch. 980 patients, as DHFS has done here. Furthermore, Thielman's argument is premised on the assumption that a ch. 980 patient has the right to be transported to and from a treatment facility free from restraints. However, there is nothing in the plain language of the statute that grants Thielman that right and the United States Court of Appeals for the Seventh Circuit has concluded Thielman has no such right. *Thielman v. Leean*, 282 F.3d 478, 484 (7th Cir. 2002). Rather, § 51.61(1)(i) granted DHFS permission to transport ch. 980 patients in restraints for safety reasons. Therefore, we conclude that § 51.61(1)(i) is not internally ambiguous with regard to transporting ch. 980 patients based solely on the words within the statute itself.

¶ 12. Thielman's second argument is rooted in his reading of the interplay between WIS. STAT. § 51.61(1)(e) and § 51.61(1)(i) that he concludes requires the result ordered by the circuit court. It is true that a statute that appears unambiguous on its face, may be rendered ambiguous by its interaction with and relation to other statutes. *State v. White*, 97 Wis. 2d 193, 198, 295 N.W.2d

346, 348 (1980). Thielman begins by contending that under § 51.61(1)(e), ch. 980 patients have a right to the least restrictive conditions no matter whether they are in an institution or being transported. DHFS contends that § 51.61(1)(e) does not apply to transportations because there is a more specific statute on the topic, and the circuit court ultimately came to the same conclusion.

¶ 13. We begin our analysis of this argument by examining the provisions of WIS. STAT. § 51.61(1)(e), which state in relevant part:

> [Patients] have the right to the least restrictive conditions necessary to achieve the purposes of admission, commitment or protective placement, under programs, services and resources that the county board of supervisors is reasonably able to provide . . . .

Subsection (e) is focused on accomplishing the specific purpose for which each individual patient was committed. Here, the purpose of Thielman's commitment is to treat his mental defect that causes him to be sexually dangerous. However, this must be accomplished while protecting him and others from his dangerousness. *Anthony*, 2000 WI 94 at ¶ 12. DHFS is required to work toward correcting Thielman's sexual dangerousness by the least restrictive means. Section 51.61(1)(e) is a general statement of the terms and conditions of confinement as they bear on the purpose of the commitment. Accordingly, it is not aimed at the specific, temporary task of transporting a patient to or from an institution.

¶ 14. On the other hand, WIS. STAT. § 51.61(1)(i) does address transports. It is the more specific statutory provision bearing on the use of physical restraints when

transporting a patient ·for medical care, the focus of Thielman's complaint. When two statutes could be interpreted to apply to the same area of concern, the more specific provision controls. *State v. Smith*, 106 Wis. 2d 151, 159, 316 N.W.2d 124, 128 (Ct. App. 1982). Furthermore, there is nothing in § 51.61(1)(e) that directs its application during transports. It applies to conditions used in accomplishing the "purpose" for which the commitment was made, and nothing in the language chosen by the legislature for § 51.61(1)(e) causes § 51.61(1)(i) to become ambiguous. The two subsections simply apply on different occasions.

¶ 15. Furthermore, WIS. STAT. § 51.61(1)(i) has long provided that if a patient committed for any reason has a "recent history of physical aggression" restraints could be used during transport. Therefore, if the only occasion on which a ch. 980 patient could be restrained during transport were when he/she had recently exhibited overt physical aggression, there would have been no need to add the provision to § 51.61(1)(i) stating that patients "who are detained or committed under ch. 980," may also be restrained for security during transport. Accordingly, we conclude that the legislature unambiguously permitted DHFS to exercise its discretion by a reasonable method of its choice.[6]

**DHFS's Discretion.**

¶ 16. We next review whether DHFS erroneously exercised its discretion. An agency exercises its discre

---

[6] The contention of the dissent is that we have "ignored" the restraints permitted when a patient has a recent history of violence. We have not. Rather, we have relied on the additional authority granted DHFS for security reasons when transporting ch. 980 patients.

tion appropriately when it considers the relevant facts, applies the proper standard of law and, using a rational process, reaches a conclusion that is reasonable. *See Rodak v. Rodak*, 150 Wis. 2d 624, 631, 442 N.W.2d 489, 492 (Ct. App. 1989). Here, Mario Canziani, WRC's security director, averred that the WRC's policy was based in part on specific instances of aggression by ch. 980 patients, including battery to the staff and other patients. He related that there have been at least six cases of battery by ch. 980 patients that have been referred for prosecution since 1998, and in one instance, a patient escaped during transport and abducted a child. Canziani also averred that the transportation policy was based on the nature of ch. 980 commitments where patients have been individually adjudicated sexually violent and dangerous. Furthermore, he opined that since their commitment may last the entirety of their lives, they are more prone to attempt escape than the average prisoner. *See* WIS. STAT. § 980.06. Canziani also averred that the WRC policy permits security staff to depart from the written policy and apply fewer restraints during transport if the situation warrants. Patients may also request that plastic or alternative restraints be used if he/she has an adverse reaction to metal restraints.[7]

---

[7] Thielman contends that DHFS promulgated Policy No. 3-1-8-P dealing with the use of restraints during transports of patients and that policy requires the use of the least restrictive means and documentation in the patient's treatment record of the reasons restraints were used. He contends DHFS is not following that policy. DHFS does not respond to this argument. However, we note Policy 3-1-8-P is dated 5/7/96, long before WIS. STAT. § 51.61(1)(i) was amended in regard to the transport of ch. 980 patients, and that DHFS currently employs a trans-

¶ 17. Accordingly, we conclude that DHFS did not erroneously exercise its discretion in permitting the transportation of ch. 980 patients to and from treating institutions in full restraints. Therefore, we reverse the circuit court's order prohibiting WRC from transporting Thielman, and similarly situated patients, in full restraints absent individual determinations that such restraints are the least restrictive mode of transporting each individual patient.

## CONCLUSION

¶ 18. Because we conclude that WIS. STAT. § 51.61(1)(i) grants broad discretionary power to DHFS sufficient to permit its treatment facilities to transport WIS. STAT. ch. 980 patients in restraints for security reasons and because there is nothing in the language of the statute that requires treatment facilities to exercise that discretion for each individual patient, rather than on the basis of its experience with ch. 980 patients as a group and the individualized prior finding of sexual dangerousness that each ch. 980 patient has had made, we reverse the circuit court's order.

*By the Court.*—Order reversed.

¶ 19. DYKMAN, J. (*dissenting*). This is a case about stereotypes. It involves a group of patients civilly committed under WIS. STAT. ch. 980 (1999–2000).[1] The question is whether the Department of Health and Family Services can place all patients in restraints

---

portation policy that states the staff's primary responsibility during transport is public safety.

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

when transporting them, or whether DHFS must consider individual circumstances before placing a patient in restraints for transport.

¶ 20. The question is one of statutory interpretation. It involves a statute, WIS. STAT. § 51.61 entitled "Patients rights." The statute begins: "[E]ach patient shall." What follows is a comprehensive list of requirements that DHFS must follow. Getting closer to the issue at hand, § 51.61(1)(i)1 begins: " . . . have a right to be free from physical restraint and isolation except for emergency situations or when isolation or restraint is a part of a treatment program." Then comes a comprehensive list of requirements for DHFS to follow when using isolation or restraints.

¶ 21. One cannot help but notice the emphasis the legislature has put on the limited situations when restraints can be used: "Isolation or restraint may be used only when less restrictive measures are ineffective or not feasible and shall be used for the shortest time possible." *Id.* And "Isolation or restraint may be used for emergency situations only when it is likely that the patient may physically harm himself or herself or others." *Id.* Other parts of the statute speak to the required use of physicians or psychologists to order the use of restraints.[2]

---

[2] The majority also finds WIS. STAT. § 51.61(1)(e) inapplicable, because it does not specifically apply to restraints during transportation. While the observation that § 51.61(1)(e) does not specifically apply to transport is of course correct, the majority does not recognize that courts are to consider all parts of a statute when harmonizing ambiguous parts of the statute. *Landis v. Physicians Ins. Co.*, 2001 WI 86, ¶ 16, 245 Wis. 2d 1, 628 N.W.2d 893. Section 51.61(1)(e) is useful in determining the overall intent and scope of the statute. It is evidence that the legislature disfavored the use of restraints except when no other

¶ 22. The statute then continues with exceptions to its policy limiting the use of restraints. There are really only two sentences that specifically speak to the case we decide today. One sentence reads: "Patients who have a recent history of physical aggression may be restrained during transport to or from the facility." *Id.* The only reasonable interpretation of this sentence is that DHFS is permitted to use restraints if a patient has a recent history of physical aggression. The second sentence reads: "Patients who are committed or transferred under s.51.35(3) or 51.37 or under ch. 971 or 975, or who are detained or committed under ch. 980, may be restrained for security reasons during transport to or from the facility."

¶ 23. Both sentences concern themselves with the use of restraints during transport. If we look at the first sentence alone, it seems obvious that DHFS must make an individual inquiry as to each ch. 980 patient it intends to transport to determine whether the patient has a recent history of physical aggression. The second sentence permits a patient to be restrained for security reasons during transport.

¶ 24. The majority's method of dealing with these two sentences is to ignore the first sentence because the second sentence doesn't require DHFS to consider individual reasons for restraints during transport. The majority holds that by doing this, it can conclude that WIS. STAT. § 51.61(1)(i)1 unambiguously permits DHFS to transport all patients in restraints without an inquiry into whether the restraints are needed.

¶ 25. Initially, one might ask: "Why not ignore the second sentence? It isn't any better or any worse

choice existed. In that respect, § 51.61(1)(e) applies to the issue we decide today. It gives ch. 980 patients the right to the least restrictive conditions necessary for their treatment.

than the first one." But ignoring any part of a statute is judicially frowned upon. "Moreover, in interpreting a statute, courts must attempt to give effect to every word of a statute, so as not to render any portion of the statute superfluous." *Landis v. Physicians Ins. Co.*, 2001 WI 86, ¶ 16, 245 Wis. 2d 1, 628 N.W.2d 893. So, I would start with an intent to give meaning to both sentences. When confronted with a statutory inconsistency, a court's duty is to construe two statutes on the same subject matter in a manner as to harmonize these provisions in order to give each full force and effect. *Ahrens v. Town of Fulton*, 2002 WI 29, ¶ 28, 251 Wis. 2d 135, 641 N.W.2d 423 (citation omitted).

¶ 26. First, of course, I must determine whether the two sentences, and therefore the statute, is ambiguous. A statute is ambiguous if it is capable of being understood in more than one way or in more than one sense by reasonably well-informed persons. *State ex rel. Kaminski v. Schwarz*, 2001 WI 94, ¶ 29, 245 Wis. 2d 310, 630 N.W.2d 164.[3] The majority concludes that the two sentences, and therefore the statute, are not ambiguous. But the way the majority does this is to ignore the first sentence.

¶ 27. I don't think it's that easy. A sentence in a statute permitting restraint during transport only if a patient has a recent history of physical aggression is difficult for me to ignore when the question is whether

---

[3] An alternative test leads to the same result. A statute is ambiguous if both parties argue that a "plain reading" of statutes supports their respective positions. *Appointment of Interpreter in State v. Le*, 184 Wis. 2d 860, 867, 517 N.W.2d 144 (1994). However, assigning different interpretations to the scope and meaning of a statutory exception does not lead to the same result. *State ex rel. Girouard v. Jackson Circuit Ct.*, 155 Wis. 2d 148, 154–55, 454 N.W.2d 792 (1990).

DHFS can uniformly use restraints on all ch. 980 patients during transport. Initially, therefore, I conclude that WIS. STAT. § 51.61(1)(i)1 is ambiguous because reasonably well-informed persons could interpret the statute in two ways, depending upon which of the two sentences the reasonably well-informed person focused on. At least, the statute is unclear.

¶ 28. It is also well understood what courts are to do when confronted with an ambiguous statute. If a statute is unclear or ambiguous, courts use extrinsic aids for guidance. *Kaminski*, 2001 WI 94 at ¶ 29. When reasonable minds could differ as to the meaning of a statute, the court examines the scope, history, context, subject matter and purpose of the statute in question. *Kopke v. A. Hartrodt S.R.L.*, 2001 WI 99, ¶ 17, 245 Wis. 2d 396, 629 N.W.2d 662.

¶ 29. Any ambiguity disappears when considering the scope, subject matter and purpose of WIS. STAT. § 51.61 as a whole. This is a statute which, in lengthy detail, outlines "Patients rights." That is its title. Reading this lengthy statute, one cannot help but note that the Wisconsin legislature has gone to great lengths to protect civilly committed patients. The first sentence I have considered, which the majority concludes it can ignore, is very much consistent with the remaining parts of this lengthy statute, and consistent with the purpose of the statute—to grant real and extensive rights to individual patients confined in a hospital against their will. I cannot ignore a statute which permits restraint during transport only if the patient has a history of recent physical aggression.

¶ 30. But I must, if I can, harmonize the first sentence, and the balance of the statute with the last sentence in WIS. STAT. § 51.61(1)(i)1. I find this possible. The last sentence of the statute tells DHFS that it can

restrain a patient during transport only for security reasons. This is an exception to the rights given patients earlier in the statute. Exceptions are to be narrowly construed. *Fox v. Bock*, 149 Wis. 2d 403, 411, 438 N.W.2d 589 (1989). It makes common sense in a statute granting patients' rights that restraints during transport are limited to what is an overriding concern —the safety and security of the patient and the persons transporting the patient. It seems irrational to me to recognize that restraints during transport would serve no rational purpose in an individual case, but to still require the restraints.

¶ 31. The first sentence tells us how DHFS is to determine when security requires transport restraints. The answer is clear: Only when the patient has shown a recent history of physical aggression. This too makes common sense. A docile patient whose history in the institution is one of compliance and flexibility is unlikely to threaten his security or that of his transporters.

¶ 32. DHFS has interpreted WIS. STAT. § 51.61 to require an individual assessment of a patient before placing him or her in restraints for transport.[4] DHFS Policy No. 3–1–8–P provides: "In accordance with WIS. STAT. 51.61(1)(i), Patients may be restrained during transport to or from the facility. The least restrictive restraint necessary to protect the patient and others should be used."

¶ 33. The majority discounts this policy order by noting that Policy No. 3–1–8–P was promulgated before

---

[4] The administrative interpretation of a statute is of great assistance in interpreting the meaning of a statute. Indeed, we are to defer to an administrative agency's interpretation of a statute unless it is unreasonable. *Theuer v. LIRC*, 2001 WI 26, ¶ 14, 242 Wis. 2d 29, 624 N.W.2d 110.

a recent amendment to Wis. Stat. § 51.61(1)(i)1. The statutory amendment, however, only added ch. 980 patients to a list of patients to whom the policy applied. DHFS did not repeal the policy after the statutory amendment. I conclude that DHFS's policy reflects the agency's interpretation of the statute, and that the majority should have deferred to this reasonable interpretation. *Hillhaven Corp. v. DHFS*, 2000 WI App 20, ¶ 12 n.6, 232 Wis. 2d 400, 606 N.W.2d 572.

¶ 34. The requirement of individual assessment of patients to determine whether they are transport risks fits perfectly with this harmonization of the two sentences in Wis. Stat. § 51.61(1)(i)1. The second sentence I have considered tells its readers that patients may be restrained for security reasons during transport. The first sentence explains what those security reasons are: A history of recent physical aggression. While the two sentences could have been written to more succinctly convey this meaning, that is not the test. In my view, it is not possible to read these two sentences as giving DHFS *carte blanche* to place transported patients in restraints for any reason or no reason.

¶ 35. It is always easier to stereotype individuals and ascribe perceived traits of the group to all the individuals in the group. "Irish need not apply" and "Women belong in the home" are stereotypes that once existed, permitting what we now see as irrational classifications. Government is prone to stereotyping because it is easy, it sets out a rule that all must follow, and it limits the discretion of individual decision makers. "Everyone is treated alike" is an easily defended policy. Transporting a comatose patient in full restraints is therefore defensible.

¶ 36. But as with more pernicious stereotypes, individuals can fit the stereotype but not exhibit the behavior ascribed to the group. It is only by examining the individual that one can determine his or her individual qualities or detriments. So, when a statute focused on protecting patients' rights extending over five pages in the Wisconsin Statutes must be interpreted, I do so in favor of an interpretation comporting with the intent of the statute as a whole, and not one which flies in the face of that intent by permitting DHFS to stereotype patients. That is the easy way out, but not the right one. That is why I respectfully dissent.