Richard AHRENS, Shirley Ahrens, Robert Albright, Shirley Albright, Barbara Allen, Nicholas Allen, Dolores Allen, June Ann Amell, Arnold Anderson, Loraine Anderson, John Augustyniak, Margaret Augustyniak, Milton Bates, Helen Bates, Robert Bauer, Gail Bauer, David Bear, Karen Bear, Michael Bellettiere, Pat Bellettiere, Otto Benz, Glen Black, Melaine Black, Edward Blanchard, Jane Blanchard, Kathy Blazyk, Nordine Bolstad, Nancy Bolstad, Jim Booker, Diana Booker, Virginia Boswell, Robert Boszko, Kathy Boszko, Donald Brake, Mary Brake, Albert Brueggeman, Mary Ann Brueggeman, Fred Burrow, Rosemary Burrow, Wallace Campbell, Donald Childers, Robert Clark, Ilona Clark, Gary Curry, Sandra Curry, Donald Dahlke, Lyla Dahlke, Emery DeRosier, Luvern DeRosier, M.A. DiMarcantonio, Thomas Draws, Vernon Duessing, Dean Eveland, Donna Eveland, Lewis Farmer, Kathleen Farmer, Louis Finger, Loretta Finger, Robert Fisher, Jean Fisher, Mike Foley, Mary Lou Foley, Charles Foudray, Milly Foudray, Diane Franke, Bill Neff, Wayne Frantz, Janet Frantz, John Fritz, Paul Gauer, Sandy Gauer, Gene Gehrt, Jane Gehrt, Antonino Giardina, Rose Giardina, Frank Giardina, Donald Ginchoff, Patricia Ginchoff, Sandra Goff, Kenneth Gray, Jane Gray, Richard Gross, Jane Gross, Wilbur Groth, Lois Groth, Caroline Gruner, Joe Gruspier, Alice Grus-

135

pier, Donna Gurholt, Robert Hanlon, Shirley
Hanlon, William Hefka, Gail Hefka, Donald
Heidner, Helen Heidner, Jack Hill, Mary K. Hill,
Edward Hinchley, Marge Hinchley, Darwin Hoefs,
Judy Hoefs, Bill Hoke, Rita Hoke, Philip Howard,
Helen Howard, Albert Huber, Arlene Huber,
Dean Huffstutler, Jinny Huffstutler, Craig
Hughes, Sandra Hughes, Edward Hughes, Mar-
lene Hughes, Terry Hurm, Susan Hurm, Lenard
W. Jendal, Edith Jendal, Herman L. Johnson,
Mary Kane, Edward Kaszubowski, Steven Kosta-
kos, Francis Kozina, Maryellen Kozina, Walter
Kruszynski, Loretta Kruszynski, Joseph Kucher,
Ruth Kucher, Elaine LaPlant, William Linde,
Timothy Liv, Christine Liv, Mike Lockard, Tina
Lockard, Richard Lowe, Dawn Lowe, Ralph Lus-
sier, Theresa Lussier, James Lytle, Rita Lytle,
Donald Mason, Barbara Mason, Marshall Mat-
ijevich, C. James Mayer, Betty Mayer, James Mc-
Carthy, Elizabeth McCarthy, Albert McGraw, Eve-
lyn McGraw, Thomas McGuire, Howard
McIntosh, Rosetta McIntosh, William A. Meinzer,
Marion Melzer, Joseph Michalowski, Rose Micha-
lowski, Raymond Murphy, Lillian Murphy, Walter
Mysliwiec, Marcia Mysliwiec, Clarence Negus,
Imelda Negus, Edwin Nelson, Carl Nickel, Jack
Niemann, Linda Niemann, Marion Obukowicz,
Grace Obukowicz, Patricia Olson, Michael Par-
sons, Linda Parsons, Thomas Peterson, Diane
Peterson, Craig Pearson, JoAnn Pearson, Melvin
Peterson, Ruth Peterson, William Pflanz, Jackie
Pflanz, Leonard Pflughaupt, Caryl Pflughaupt,

136

Wallace Phillips, Carolyn Phillips, Donald Pierce, Jeanne Pierce, Phillip Piotrowski, Deborah Piotrowski, Leonard Piejda, Mary Piejda, Brian Pluta, Kathryn Pluta, Homer Proctor, Joyce Proctor, Michael Rausch, Richard Renaud, Vincenette Renaud, Wayne Rice, Dolores Rice, John Riley, Annette Riley, Norman Rippberger, Barbara Rippberger, Dale Rogers, Eugene Romanski, Ilene Romanski, James Rother, Hugh Ryan, Carl Schimka, Roman Schmidt, Nancy Schmidt, Clarence Schultz, Joyce Schultz, Warren Schultz, Harriet Schultz, T. George Schumert, Lemke Schurmann, Glenn Shelley, Robert Short, Rosa Short, Gary Shulz, Carol Shulz, Louis D. Simmons, Lillian Simmons, George C. Sims, Jr., Marvin E. Smith, Ronald Solner, Ray Staley, Beverly Staley, Frank Stefaniak, Londine Stefaniak, Milan Sulaver, Corinne Sulaver, Joseph Szamlewski, Barbara Szamlewski, Wesley Tanner, Carmelia Tanner, Ronald Theis, Jean Theis, Martin Tivador, Doris Tivador, Stephen Tobolic, Charles Ulam, Josephine Ulam, David Wallestad, Joyce Wallestad, Lloyd Weber, Thomas Weinmann, Madeline Weinmann, Harry Whitney, Donna Whitney, Robert Wirt, Jr., Robert Wirt, Sr., Marilyn Wirt, Jyles Womack, Lynn Womack, Hubert J. Wright, Mary Wright, Jerome Young, Fay Young and Anthony Zappia, Plaintiffs-Appellants-Petitioners,

v.

Town of Fulton, Defendant-Respondent.

137

Richard AHRENS, Shirley Ahrens, Robert Albright, Shirley Albright, Barbara Allen, Nicholas Allen, Dolores Allen, June Ann Amell, Arnold Anderson, Lorraine Anderson, John Augustyniak, Margaret Augustyniak, Milton Bates, Helen Bates, Robert Bauer, Gail Bauer, David Bear, Karen Bear, Otto Benz, Glen Black, Melaine Black, Kathy Blazyk, Nordine Bolstad, Nancy Bolstad, Jim Booker, Diana Booker, Virginia Boswell, Robert Boszko, Kathy Boszko, Donald Brake, Mary Brake, Albert Brueggeman, Mary Ann Brueggeman, Fred Burrow, Rosemary Burrow, Wallace Campbell, Donald Childers, Robert Clark, Ilona Clark, Gary Curry, Sandra Curry, Donald Dahlke, Lyla Dahlke, Emery DeRosier, Luvern DeRosier, M.A. DiMarcantonio, Thomas Draws, Vernon Duesing, Lewis Farmer, Kathleen Farmer, Louis Finger, Loretta Finger, Robert Fisher, Jean Fisher, Charles Foudray, Milly Foudray, Bill Neff, Diane Franke, Wayne Frantz, Janet Frantz, John Fritz, Paul Gauer, Sandy Gauer, Gene Gehrt, Jane Gehrt, Antonino Giardina, Rose Giardina, Frank Giardina, Donald Ginchoff, Patricia Ginchoff, Sandra Goff, Kenneth Gray, Jane Gray, Richard Gross, Jane Gross, Wilbur Groth, Lois Groth, Joe Gruspier, Alice Gruspier, Donna Gurholt, Robert Hanlon, Shirley Hanlon, William Hefka, Gail Hefka, Donald Heidner, Helen Heidner, Jack Hill, Mary K. Hill, Edward Hinchley, Marge Hinchley, Darwin Hoefs, Judy Hoefs, Bill Hoke, Rita Hoke, Philip Howard, Helen

Howard, Albert Huber, Arlene Huber, Dean Huffstutler, Jinny Huffstutler, Edward Hughes, Sandra Hughes, Edward Hughes, Marlene Hughes, Terry Hurm, Susan Hurm, Lenard Jendal, Edith Jendal, Herman L. Johnson, Mary Kane, Edward Kaszubowski, Steven Kostakos, Francis Kozina, Maryellen Kozina, Walter Kruszynski, Loretta Kruszynski, Joseph Kucher, Ruth Kucher, Elaine LaPlant, William Linde, Timothy Liv, Christine Liv, Ralph Lussier, Theresa Lussier, James Lytle, Rita Lytle, Donald Mason, Barbara Mason, Marshall Matjevich, C. James Mayer, Betty Mayer, James McCarthy, Elizabeth McCarthy, Albert McGraw, Evelyn McGraw, Thomas McGuire, William A. Meinzer, Burness Melton, Juanita Melton, Marion Melzer, Joseph Michalowski, Rose Michalowski, Raymond Murphy, Lillian Murphy, Walter Mysliwiec, Marcia Mysliwiec, Clarence Negus, Imelda Negus, Edwin Nelson, Carl Nickel, Jack Niemann, Linda Niemann, Marion Obukowicz, Grace Obukowicz, Willard Parejko, Michael Parsons, Linda Parsons, Thomas Peterson, Diane Peterson, William Pflanz, Jackie Pflanz, Leonard Pflughaupt, Caryl Pflughaupt, Wallace Phillips, Carolyn Phillips, Donald Pierce, Jeanne Pierce, Brian Pluta, Kathryn Pluta, Michael Rausch, Richard Renaud, Vincenette Renaud, Wayne Rice, Dolores Rice, John Riley, Annette Riley, Norman Rippberger, Barbara Rippberger, Dale Rodgers, Eugene Romanski, Ilene Romanski, James Rother, Hugh Ryan, Carl Schimka, Roman

Schmidt, Nancy Schmidt, Clarence Schultz, Joyce Schultz, Warren Schultz, Harriet Schultz, George T. Shumert, Glen Shelley, Robert Short, Rosa Short, Gary Shulz, Carol Shulz, Louis D. Simmons, Lillian Simmons, George C. Sims, Jr., Marvin Smith, Ronald Solner, Ray Staley, Beverly Staley, Frank Stefaniak, Londine Stefaniak, Milan Sulaver, Corinne Sulaver, Joseph Szamlewski, Barbara Szamlewski, Wesley Tanner, Carmelia Tanner, Ronald Theis, Jean Theis, Martin Tivador, Doris Tivador, Stephen Tobolic, Charles Ulam, Josephine Ulam, David Wallestad, Joyce Wallestad, Lloyd Weber, Harry Whitney, Donna Whitney, Robert Wirt, Jr., Robert Wirt, Marilyn Wirt, Jyles Womack, Lynn Womack, Hubert J. Wright, Mary Wright, Jerome Young, Fay Young and Anthony Zappia, Plaintiffs-Appellants-Petitioners,

v.

TOWN OF FULTON, Defendant-Respondent.

Richard AHRENS, Shirley Ahrens, Robert Albright, Shirley Albright, Barbara Allen, Nicholas Allen, Dolores Allen, June Ann Amell, Arnold Anderson, Lorraine Anderson, John Augustyniak, Margaret Augustyniak, Milton Bates, Helen Bates, Robert Bauer, Gail Bauer, David Bear, Karen Bear, Michael Bellettiere, Pat Bellettiere, Otto Benz, Glen Black, Melanie Black, Edward Blanchard, Jane Blanchard, Kathy Blazyk, Nordine Bolstad, Nancy Bolstad, Jim Booker, Diana

140

Booker, Virginia Boswell, Robert Boszko, Kathy Boszko, Donald Brake, Mary Brake, Albert Brueggeman, Mary Ann Brueggeman, Fred Burrow, Rosemary Burrow, Wallace Campbell, Donald Childers, Robert Clark, Ilona Clark, Gary Curry, Sandra Curry, Donald Dahlke, Lyla Dahlke, Emery DeRosier, Luvern DeRosier, M.A. DiMarcantonio, Thomas Draws, Vernon Duesing, Dean Eveland, Donna Eveland, Lewis Farmer, Kathleen Farmer, Louis Finger, Loretta Finger, Robert Fisher, Jean Fisher, Mike Foley, Mary Lou Foley, Charles Foudray, Milly Foudray, Bill Neff, Diane Franke, Wayne Frantz, Janet Frantz, John Fritz, Paul Gauer, Sandy Gauer, Gene Gehrt, Jane Gehrt, Antonio Giardina, Rose Giardina, Frank Giardina, Donald Ginchoff, Patricia Ginchoff, Sandra Goff, Kenneth Gray, Jane Gray, Richard Gross, Jane Gross, Wilbur Groth, Lois Groth, Caroline Gruner, Joe Gruspier, Alice Gruspier, Donna Gurholt, Robert Hanlon, Shirley Hanlon, William Hefka, Gail Hefka, Donald Heidner, Helen Heidner, Jack Hill, Mary K. Hill, Edward Hinchley, Marge Hinchley, Darwin Hoefs, Judy Hoefs, Bill Hoke, Rita Hoke, Phillip Howard, Helen Howard, Albert Huber, Arlene Huber, Dean Huffstutler, Jinny Huffstutler, Craig Hughes, Sandra Hughes, Edward Hughes, Marlene Hughes, Terry Hurm, Susan Hurm, Lenard W. Jendal, Edith Jendal, Herman L. Johnson, Mary Kane, Edward Kaszubowski, Steven Kostakos, Dr. Francis Kozina, Maryellen Kozina, Walter Kruszynski,

Loretta Kruszynski, Joseph Kucher, Ruth Kucher, Elaine LaPlant, William Linde, Timothy Liv, Christine Liv, Mike Lockard, Tina Lockard, Richard Lowe, Dawn Lowe, Ralph Lussier, Theresa Lussier, James Lytle, Rita Lytle, Donald Mason, Barbara Mason, Marshall Matijevich, C. James Mayer, Betty Mayer, James McCarthy, Elizabeth McCarthy, Albert McGraw, Evelyn McGraw, Thomas McGuire, Howard McIntosh, Rosetta McIntosh, William A. Meinzer, Burness Melton, Juanita Melton, Marion Melzer, Joseph Michalowski, Rose Michalowski, Raymond Murphy, Lillian Murphy, Walter Musliwiec, Marcia Mysliwiec, Clarence Negus, Imelda Negus, Edwin Nelson, Carl Nickel, Jack Niemann, Linda Niemann, Marion Obukowicz, Grace Obukowicz, Patricia Olson, Willard Parejko, Michael Parsons, Linda Parsons, Thomas Peterson, Diane Peterson, Craig Pearson, JoAnn Pearson, Melvin Peterson, Ruth Peterson, William Pflanz, Jackie Pflanz, Leonard Pflughaupt, Caryl Pflughaupt, Wallace Phillips, Carolyn Phillips, Donald Pierce, Jeanne Pierce, Phillip Piotrowski, Deborah Piotrowski, Leonard Piejda, Mary Piejda, Brian Pluta, Kathryn Pluta, Homer Proctor, Joyce Proctor, Michael Rausch, Richard Renaud, Vincenette Renaud, Wayne Rice, Dolores Rice, John Riley, Annette Riley, Norman Rippberger, Barbara Rippberger, James Rother, Roman Schmidt, Nancy Schmidt, Clarence Schultz, Joyce Schultz, Warren Schultz, Harriet Schultz, Lemke Schurmann, Glenn Shelley, Mar-

vin E. Smith, Wesley Tanner, Carmelia Tanner, Martin Tivador, Doris Tivador, Stephen Tobolic, Lloyd Weber, Harry Whitney, Donna Whitney, Robert Wirt, Jr., Robert Wirt, Marilyn Wirt, Jyles Womack, Lynn Womack, Hubert J. Wright, Mary Wright, Jerome Young, Fay Young and Anthony Zappia, Plaintiffs-Appellants-Petitioners,

v.

TOWN OF FULTON, Defendant-Respondent.

Supreme Court

*No. 99–2466. Oral argument October 2, 2001.—Decided March 26, 2002.*

2002 WI 29

(Also reported in 641 N.W.2d 423.)

143

For the plaintiffs-appellants-petitioners there were briefs by *Dianne M. Soffa, Russell W. Devitt* and *Soffa & Devitt, LLC,* Whitewater, and oral argument by *Russell W. Devitt.*

For the defendant-respondent there was a brief by *Robert Horowitz, Meg Vergeront* and *Stafford Rosenbaum LLP,* Madison, and oral argument by *Robert Horowitz.*

¶ 1. WILLIAM A. BABLITCH, J. Richard Ahrens and approximately 136 to 138 other mobile home owners (owners)[1] appeal from a court of appeals' decision that held that, with respect to all but one of the twenty representative owners chosen to represent the entire class, their mobile homes were appropriately taxed as real property, as opposed to personal property as the owners contend. The statutes require that a mobile home must be "set upon a foundation" before it can be

---

[1] The parties use both 136 and 138 as the total number of mobile home owners in this action. The precise number is not relevant to this appeal.

147

taxed as real property. We conclude that all of the representative owners' mobile homes were "set upon a foundation" within the meaning of the statute.

## I

¶ 2. This case involves the classification of mobile homes for property tax purposes. The law pertaining to such classification is important to note at the outset. "Mobile homes" are defined under Wis. Stat. § 66.058(1)(d) (1997–98)[2] as follows:

> "Mobile home" is that which is, or was as originally constructed, designed to be transported by any motor vehicle upon a public highway and designed, equipped and used primarily for sleeping, eating and living quarters, or is intended to be so used; and includes any additions, attachments, annexes, foundations and appurtenances.

For property tax purposes, such mobile homes are classified into two categories: improvements to real property and personal property. Wisconsin Stat. § 70.043 sets forth the criteria for each classification, stating:

> 70.043 Mobile homes. (1) A mobile home as defined in s. 66.058, is an improvement to real property if it is connected to utilities and is set upon a foundation upon land which is owned by the mobile home owner. In this section, a mobile home is "set upon a foundation" if it is off its wheels and is set upon some other support.
>
> (2) A mobile home, as defined in s. 66.058, is personal property if the land upon which it is located is

---

[2] All subsequent references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

not owned by the mobile home owner or if the mobile home is not set upon a foundation or connected to utilities.

Wis. Stat. § 70.043(1)-(2). For purposes of this case, it is important to note that Wis. Stat. § 70.111(19)(b) provides an exemption from taxation for some mobile homes that are classified as personal property. This statute specifically provides:

> 70.111 Personal property exempted from taxation. The property described in this section is exempted from general property taxes:
>
> . . . .
>
> (19) Camping Trailers and Recreational Mobile Homes. (a) Camping trailers as defined in s. 340.01(6m).
>
> (b) Mobile homes, as defined in s. 66.058, that are no larger than 400 square feet and that are used primarily as temporary living quarters for recreational, camping, travel or seasonal purposes.

Wis. Stat. § 70.111(19)(b). In this case, all of the owners' mobile homes were classified as improvements to real property.

¶ 3. The owners brought actions pursuant to Wis. Stat. § 74.35, which permits taxpayers to recover any unlawful taxes. This statute provides the following definition for an "unlawful tax":

> 74.35 Recovery of unlawful taxes. (1) Definitions. In this section "unlawful tax" means a general property tax with respect to which one or more errors specified in s. 74.33(1)(a) to (f) were made. "Unlawful tax" does not include a tax in respect to which the alleged defect is solely that the assessor placed a valuation on the property that is excessive.

Wis. Stat. § 74.35(1). The owners claimed that errors occurred under Wis. Stat. § 74.33(1)(a), (b), or (c). This statute provides:

> 74.33 Sharing and charging back of taxes due to palpable errors. (1) Grounds. After the tax roll has been delivered to the treasurer of the taxation district under s. 74.03, the governing body of the taxation district may refund or rescind in whole or in part any general property tax shown in the tax roll, including agreed-upon interest, if:
>
> (a) A clerical error has been made in the description of the property or in the computation of the tax.
>
> (b) The assessment included real property improvements which did not exist on the date under s. 70.10 for making the assessment.
>
> (c) The property is exempt by law from taxation, except as provided under sub. (2).

Wis. Stat. § 74.33(1)(a)-(c). With this legal background, we next discuss the facts and procedural history of this case.

## II

¶ 4. The owners each own a mobile home located on individually-owned lots in a real estate development known as Wisconsin's Rock River Leisure Estates in the Town of Fulton (Town) in Rock County. For the 1995, 1996, and 1997 tax years, the Town taxed the mobile homes as improvements to real property, as defined under Wis. Stat. § 70.043(1). For each tax year, the owners paid the taxes and then filed claims with the Town pursuant to Wis. Stat. § 74.35(2), which permits property taxpayers to seek recovery of unlawful taxes

from the taxation district that collected the tax. The Town disallowed these claims.

¶ 5. For each tax year, the owners also filed separate actions in Rock County Circuit Court to recover the amount of the claim not allowed, as permitted under Wis. Stat. § 74.35(3)(d). In each action, the owners claimed that their homes should have been exempt personal property under Wis. Stat. § 70.111(19)(b) and that taxation of their homes as improvements to real property constituted an error under Wis. Stat. § 74.33(1), requiring a finding that an unlawful tax had been levied. The circuit court consolidated the actions by agreement of the parties. The parties then agreed that 20 of the approximately 138 owners would serve as representative owners and would stipulate to certain facts.[3]

¶ 6. The parties stipulated to the following relevant facts regarding the 20 representative owners. Each owner has on his or her lot a "basic unit," which consisted of "a structure that is, or was as originally constructed, designed to be transported by any motor vehicle upon a public highway and designed, equipped and used primarily for sleeping, eating, and living quarters." This definition is basically identical to the definition of "mobile home" under Wis. Stat.

---

[3] The representative owners included Richard and Shirley Ahrens, Robert and Gail Bauer, David and Karen Bear, Albert and Mary Ann Brueggeman, Nordine and Nancy Bolstad, Robert and Kathy Boszko, Donald and Lyla Dahlke, Emery and Luvern Derosier, Dean and Donna Eveland, Mary Lou and Michael Foley, Wilbur and Lois Groth, Terry and Susan Hurm, Donald and Helen Heidner, Dean and Virginia Huffstutler, Timothy and Christine Liv, Marion and Grace Obukowicz, James and Violet Rother, Joseph Rupperech, Hugh and Elizabeth Ryan, and Charles and Josephine Ulam.

§ 66.058(1)(d). The floor areas of each of these "basic units" ranges from 372 to 420 square feet. Each basic unit still has its wheels attached and is connected to utilities. All but four of the units have their weight at least partially on their wheels and partially on some form of stabilizer, such as cement blocks, cinder blocks, or screw jacks. Three units have their weight completely supported by stabilizers. One unit has no stabilizers and is supported only by its wheels. Each owner also has additional structures—including decks, screen rooms, porches, and sheds—on their lot that are either attached to or freestanding from the basic unit. Finally, two of the owners reside in their homes for 12 months of the year; three of them for seven months; three of them for six months; one for five and one-half months; one for three months; and the rest for two months of the year or less.

¶ 7. The Town moved for summary judgment, and the circuit court, the Honorable Michael J. Byron, granted the Town partial summary judgment. In its decision, the court examined two issues. First, it examined whether the representative owners' mobile homes were properly taxed as improvements to real property. In its analysis, the court noted that, because the parties had stipulated that the homes were connected to utilities and situated on land owned by the mobile home owner, the only question was whether the homes were "set upon a foundation." Under this requirement, "a mobile home is 'set upon a foundation' if it is off its wheels and is set upon some other support." Wis. Stat. § 70.043(1). The court found the terms "off its wheels" and "set upon some other support" ambiguous and construed the statute to mean that a mobile home is an improvement to real property when the majority of the weight of the home is borne by some support

other than its wheels. From this interpretation, the court concluded that there were some of the representative owners' homes that were improperly assessed and taxed as improvements to real property. The court, however, regarded any error in classification as immaterial, concluding that, even if the property had been appraised as personal property, the value of the tax would have been the same.

¶ 8. The second issue that the court examined was whether any of the representative owners' mobile homes qualified for the personal property tax exemption under Wis. Stat. § 70.111(19)(b). In its analysis, the court concluded that all additional structures—even freestanding structures that were unattached to the basic unit—must be considered in determining whether the owners met the 400 square foot limitation under the statute. When considering the additional structures on the lots, the court concluded that the representative owners' homes were all over 400 square feet and that therefore they would not qualify for the personal property tax exemption.

¶ 9. Following this decision, the circuit court directed the parties to submit additional briefs regarding the effect of the court's previous decision on the remaining owners. After briefs were submitted, the court issued a supplemental decision and order. In the decision, the court analyzed whether the owners had established a cause of action for unlawful taxes, particularly whether any errors under Wis. Stat. § 74.33(1)(a), (b) and (c) had occurred, including whether the taxed property was exempt by law from taxation. The court concluded that the owners had established no cause of action for the refund of unlawful taxes, and as a result, the court dismissed all of the owners' actions.

¶ 10. In a split decision, the court of appeals affirmed in part, reversed in part, and remanded the cause with directions. *Ahrens v. Town of Fulton,* 2000 WI App 268, ¶ 1, 240 Wis. 2d 124, 621 N.W.2d 643. Like the circuit court, the court of appeals began its analysis with the question of whether the mobile homes were "set upon a foundation." *Id.* at ¶ 9. Like the circuit court, the court also found that the statutory definition of "set upon a foundation," requiring a mobile home to be "off its wheels" and "set upon some other support" was ambiguous. *Id.* at ¶ 11. The court of appeals, however, departed from the circuit court by rejecting the circuit court's interpretation of these terms to require a "majority of the weight" of the mobile home to be off its wheels before it would be classified as real property. *Id.* at ¶ 12. Instead, the court of appeals held that the legislative history of Wis. Stat. § 70.043(1) required a finding that a mobile home is "set upon a foundation" when any part of its weight is off its wheels and set upon some other support. *Id.* at ¶¶ 15–16.

¶ 11. Applying this test, the court concluded that all but one of the representative mobile homes were properly assessed and taxed as improvements to real property "because they rest[ed], in whole or in part, on supports other than their wheels." *Id.* at ¶ 17. Thus, the court affirmed the circuit court's dismissal of these actions. *Id.* at ¶ 33. With respect to the remaining mobile home, the court concluded that any tax against it would be unlawful, pursuant to Wis. Stat. §§ 74.33 and 74.35, only if the home was exempt from taxation under Wis. Stat. § 70.111(19)(b). *Id.* at ¶ 21. In its exemption analysis, the court departed from the circuit court by concluding that freestanding additional structures must not be considered in figuring whether the 400 square feet limitation was exceeded. *Id.* at ¶ 23.

Despite this conclusion, the court still affirmed the circuit court's decision that the remaining mobile home was not exempt because it exceeded 400 square feet in size, and therefore, it dismissed the action. *Id.* at ¶¶ 25, 33. With respect to the nonrepresentative owners, the court reversed and remanded to allow the owners to show that their mobile homes were personal property and exempt in light of the conclusions reached by the court. *Id.* at ¶ 31. The court rejected the owners' claims that it and the circuit court violated the owners' rights to due process and equal protection and usurped a legislative function by allegedly holding the owners liable for personal property taxes that were never levied on the homes by the Town. *Id.* at ¶¶ 26–29.

¶ 12. The owners now argue that both the circuit court and the court of appeals erred in its interpretation of Wis. Stat. § 70.043(1). They instead rely on the interpretation provided by Judge Dykman in his dissent. *See id.* at ¶¶ 34–45 (Dykman, J., dissenting). Dykman concluded that the term "off its wheels" is not ambiguous; "off its wheels" means that there is space between the tires and the ground. *Id.* at ¶¶ 41–42 (Dykman, J., dissenting). The owners urge us to adopt this interpretation and to conclude that, for those representative owners whose mobile homes are not "off their wheels" under this definition—and are therefore not real property—the levy of real property taxes should be held void. The owners then assert that the taxes against these homes should be refunded and the actions of the nonrepresentative owners should be remanded for further proceedings on whether their mobile homes were properly taxed as improvements to real property.

¶ 13. We conclude, however, that the interpretation of Wis. Stat. § 70.043(1) put forth by the owners

and Judge Dykman should not be followed. Instead, with some modification, we adopt the interpretation of the court of appeals. We hold that a mobile home is "set upon a foundation" when the home is resting for more than a temporary time, in whole or in part, on some other means of support than its wheels. This definition rests on a distinction between temporary and permanent, recognizing that the legislature intended that the permanency of the mobile home was important in making a distinction between real and personal property. We conclude that the legislature intended that anything more than a transient location would be permanent and, accordingly, an improvement to real property.

### III

¶ 14. The primary question in this case is whether the Town properly classified and taxed the owners' mobile homes as improvements to real property. To answer this question, we must interpret Wis. Stat. § 70.043(1) and determine when a mobile home is properly regarded as an improvement to real property. If we determine that the Town improperly classified and taxed the homes, the next question is whether this misclassification error provides a basis for recovery under Wis. Stat. § 74.35.

¶ 15. We review the circuit court's grant of summary judgment. We review motions for summary judgment using the same methodology as the circuit court. *Meyer v. Sch. Dist. of Colby*, 226 Wis. 2d 704, 708, 595 N.W.2d 339 (1999). Wisconsin Stat. § 802.08(2) sets forth this methodology, stating that summary judgment shall be granted "if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Resolution of this case also requires an interpretation of several statutes. "Interpretation of a statute and application of a statute to undisputed facts are ordinarily questions of law that this court considers independent of the decisions of the circuit court and court of appeals, but benefiting from their analyses." *Meyer,* 226 Wis. 2d at 708.

¶ 16. "Our sole purpose when interpreting a statute is to discern the intent of the legislature." *United Methodist Church, Inc. v. Culver,* 2001 WI 55, ¶ 26, 243 Wis. 2d 394, 627 N.W.2d 469. To this end, we begin with the language of the statute. *Id.* "Courts should resolve statutory ambiguities so as to advance the legislature's purpose in enacting the legislation." *Id.*

¶ 17. Mobile homes in Wisconsin may be subject to property tax as real or personal property, may be subject to monthly mobile home parking fees, or may be exempt from property taxation and parking fees. *See* Wis. Stat. §§ 66.058(3)(c), 70.043, 70.111(19)(b), 70.112(7). In determining how or if a unit will be taxed, we first examine whether the unit meets the definition of "mobile home" under § 66.058(1)(d). The parties have so stipulated.

¶ 18. We next examine Wis. Stat. § 70.043 to determine whether each "mobile home" is personal property or an improvement to real property. The parties stipulated that the mobile homes at issue are located on property owned by the mobile home owner and are connected to utilities. Thus, the only question remain-

ing on whether the homes are improvements to real property is whether these homes are "set upon a foundation."

¶ 19. Again, "a mobile home is 'set upon a foundation' when it is off its wheels and is set upon some other support." Wis. Stat. § 70.043(1). We noted above that the circuit court and the court of appeals construed this phrase in different ways. We find the discussion by the circuit court and the court of appeals, both the majority opinion and the dissent, very helpful to our analysis.

¶ 20. The court of appeals discussed the different possible interpretations of this phrase as follows:

> This language could mean, as the owners maintain, that in order to be deemed an improvement to real property, a mobile home must have its wheels physically removed, or, at a minimum, that the entire weight of the mobile home must rest on something other than its wheels. Or, it could mean, as the Town argues, that a mobile home is "off its wheels and . . . set upon some other support" whenever any part of its weight is borne by [something] other than its wheels. Finally, it could also mean, as the trial court concluded, that what is required is that a majority of the weight of the mobile home is borne by some support other than its wheels.

*Ahrens,* 2000 WI App 268, ¶ 11. Indeed, these different reasonable interpretations dictate that we look to extrinsic aids to interpret the statute and seek to advance the legislature's purpose in our interpretation of the statute.

¶ 21. We look specifically to the legislative history of 1983 Wis. Act 342, which enacted Wis. Stat. § 70.043. Part of this legislative history includes a Legislative Council report, which discussed various legislative proposals on mobile home taxation that were considered by the Legislative Council Special Committee on Mobile

Home Taxation and Zoning. This report, which was discussed by both the circuit court and the court of appeals, provides significant evidence that the legislature adopted the current test under § 70.043(1) to address core problems that were present with the previous statutory test. 20 Wisconsin Legislative Council, *Legislation Relating to Mobile Home Taxation and Zoning* 3 (1983).

¶ 22. The previous test stated that a mobile home would be subject to taxation as real property if the value of improvements (additions, attachments, annexes, foundations, and appurtenances) to the mobile home equaled 50 percent or more of the assessed value of the mobile home. *Id.* (discussing Wis. Stat. § 66.058(1)(e) (1981–82)). The problems with this test were (1) that it was difficult and time-consuming for the assessors to apply and (2) that it was "not an accurate indicator of whether a given mobile home ha[d] taken on the character of a real estate improvement and, therefore, should be subject to property taxation as is conventional housing." *Id.* The test that has been adopted under Wis. Stat. § 70.043(1) was therefore proposed.

¶ 23. Before discussing the test, however, the report revisited the reasons for distinguishing real and personal property for property tax purposes, stating:

> The primary rationale under the property tax system for distinguishing between real and personal property is that *personal property is more mobile than real property*. It is easier to enforce and collect property taxes which are levied upon real property than taxes which are levied upon personal property. Therefore, assessment procedures, payment due dates and the remedies which are available to collect property taxes differ according to whether the property is classified as real property or as personal property.

20 Wisconsin Legislative Council, *Legislation Relating to Mobile Home Taxation and Zoning* at 3–4 (emphasis added). The report then discussed the Committee's proposal for a new test, stating:

> The Committee concluded that a better indicator than the "50%" test of when a given mobile home has taken on the character of real property is if the mobile home is hooked up to utilities and is set upon a foundation on land which is owned by the mobile home owner. This is the same test as is used by the Department of Revenue (DOR) to classify mobile homes as real property, for purposes of exempting the sale of these mobile homes from the *sales* tax [s. Tax 11.88, Wis. Adm. Code]. *The Committee believed that, under these circumstances, the mobile home is sufficiently permanent that it should be taxed as is conventional housing.*

*Id.* at 4 (second emphasis added).[4]

¶ 24. Thus, from this report, it is clear that the legislature adopted specific criteria—hooked up to utilities and set upon a foundation on land owned by the mobile home owner—to identify mobile homes that were sufficiently permanent in nature so as to be

---

[4] The Department of Revenue regulation provided:

> Tax 11.88 Mobile homes. (1) Mobile home as personal property vs. realty improvement. A mobile home is personal property if it is located in a mobile home park or other place where the land on which the mobile home is located is not owned by the mobile home owner. A mobile home is a realty improvement if it is permanently affixed to land owned by the owner of the mobile home. It is permanently affixed to the land for sales tax purposes if the mobile home sits on a foundation and is connected to utilities. "On a foundation" means it is off its wheels and sitting on some other support.

Wis. Admin. Code § Tax 11.88(1) (Jan., 1981).

regarded as improvements to real property. Thus, in interpreting the requirement that a mobile home must be "off its wheels and set upon some other support," our objective must be to incorporate those mobile homes that are "sufficiently permanent in nature." Mobile homes that do not show any signs of permanency and are mobile should fall outside the definition and be regarded as personal property.

¶ 25. Before arriving at a test, however, it is important to note the owners' objections to the court of appeals' test, which only required some of the weight of the mobile home to be off its wheels before it would be classified as an improvement to real property. Echoing Judge Dykman's dissent, their primary objection, with which we agree, is that the test effectively eliminated the possibility that a mobile home—one that is connected to utilities and is situated on the mobile home owner's real property—will ever qualify as personal property or be exempt from taxation under Wis. Stat. § 70.111(19)(b) because, they assert, a mobile home never rests entirely on its wheels. They contend that, if a mobile home is never entirely on its wheels, it will always be classified as an improvement to real property under the court of appeals' test when it is connected to utilities and on the owner's property. The exemption then is nullified for certain mobile homes that may otherwise qualify for the exemption. Judge Dykman made this observation in his dissent, stating:

> What the majority has concluded is that no mobile home located on its owner's real estate can be exempted from taxation unless the owner disconnects the mobile home from its utilities. The majority reaches this conclusion because it requires one hundred percent of the mobile home's weight to be carried on its wheels before the exemption [under Wis. Stat. § 70.111(19)(b)]

applies. But no such mobile home exists. Under Wis. Stat. § 348.10(5)(c), all mobile homes must have at least thirty-five pounds of their weight rest on something other than their wheels, and it is that thirty-five pounds that the majority uses to disqualify all 400-square-foot or less, landowner-occupied, utility-connected mobile homes from personal property tax-exempt status.

The legislature must have intended to exempt some mobile homes from personal property taxes when it enacted Wis. Stat. § 70.111(19)(b). The legislature was aware of Wis. Stat. § 70.043(1) and the significance of the distinction between mobile homes that are personal property and mobile homes that are real estate. Had the legislature wanted to tax small utility-connected mobile homes located on their owners' real estate, it could have easily done so in § 70.111(19). But it did not. The only rational explanation of the exemption is that it applies to all small qualifying mobile homes located on their owners' real estate.

*Ahrens*, 2000 WI App 268, ¶¶ 38–39 (Dykman, J., dissenting).

¶ 26. We agree with Judge Dykman's discussion. The owners argue that we should adopt the test put forth by Judge Dykman, that is, that a mobile home is "set upon a foundation" only when all of its weight is taken off its wheels and placed upon some type of support. This interpretation, the owners assert, preserves the statutory exemption under Wis. Stat. § 70.111(19)(b) because, unlike the court of appeals' test, it allows for some mobile homes, which are connected to utilities and situated on the owner's property, to still qualify as personal property. They argue that Judge Dykman's test ensures that only those mobile homes that are similar to customary homes are taxed and provides a test that is easy for assessors to apply.

We disagree with this formulation because it fails to take into account the legislative intent to reach only those mobile homes that have taken on a permanency vis-a-vis the real estate.

¶ 27. We recognize that any interpretation of Wis. Stat. § 70.043(1) should give effect to the legislature's intent to create an exemption for some mobile homes under Wis. Stat. § 70.111(19)(b). We note, however, that harmonizing these statutes is difficult because of the different criteria examined under both statutes. Specifically, under § 70.043, the location of the mobile home (on the owner's property), its utility hook-up, and its foundation are examined to determine whether it is real or personal property. Under § 70.111(19)(b), the mobile home's size (no larger than 400 square feet) and the intended use of the mobile home are examined. The different criteria create problems because some mobile homes may qualify as both real property and exempt personal property. A reevaluation of the criteria under these statutes by the legislature may be appropriate to ensure that the statutes are given their intended effect.

¶ 28. Nevertheless, "[w]hen confronted with a statutory inconsistency of this nature, it is the duty of this court, when possible, to construe statutes on the same subject matter in a manner as to harmonize these provisions in order to give each full force and effect." *Glinski v. Sheldon,* 88 Wis. 2d 509, 519, 276 N.W.2d 815 (1979).

¶ 29. We conclude that Wis. Stat. § 70.043(1) requires the following: a mobile home is an improvement to real property when the home is resting for more than a temporary time, in whole or in part, on some other means of support than its wheels. As

163

mentioned above, this definition rests on a distinction between temporary and permanent, recognizing that the legislature intended that permanency of the structure was important in distinguishing between real property and personal property. We therefore reject the test put forth by Judge Dykman, which requires the mobile home to be completely off its wheels before it is considered an improvement to real property. In this respect, we agree with the court of appeals, which stated:

> To conclude that a mobile home may not be taxed as realty until its last ounce of weight has been removed from its wheels would thwart the legislature's goal of treating mobile homes which have "taken on the character of a real estate improvement" the same as "conventional housing" for property taxation purposes.

*Ahrens,* 2000 WI App 268 at ¶ 14.

¶ 30. We decline to define "temporary" in terms of a specific number of days, concluding that it is a responsibility better left to the legislature or the state department of revenue. Suffice to say, a mobile home is not taxable as real property if its location is temporary and for a limited time. Mobile homes that are truly "mobile," that is, transitory and moving from place to place with no intent by the owner to permanently place them in one location, would certainly fall under that category. Conversely, mobile homes placed at a given location for more than a very limited time would properly be taxed as realty.

¶ 31. The statute specifically requires "other means of support." However, it does not specifically require that the support be permanently affixed to the property or the mobile home. Instead, it only requires

that the home be set upon some other "support" before it will be taxed as real property. The support mechanisms utilized by the owners in this case included chocks, basic stabilizing jacks and levelers, and blocks. The owner's use of these items for more than a temporary basis support the conclusion that the support system is sufficiently permanent.[5] When the mobile home has remained off its wheels and on the property with the same support system for more than a temporary period of time, it reflects the owner's intent to treat the mobile home as something other than personal property.

¶ 32. Thus, under this interpretation, mobile homes—even if they are connected to utilities and

---

[5] The owners argue that a mobile home's foundation must be something that is underground to be sufficiently permanent. However, the history of Tax 11.88—the regulation upon which Wis. Stat. § 70.043 is based—suggests that the regulation was written without such a requirement in mind. In particular, a memorandum discussing a hearing on the proposed regulation states:

> Members of the [Assembly Revenue] Committee expressed concern that local assessors in some areas assess some mobile homes as personal property even though they are on some sort of foundation, such as cement blocks. The Committee asked that we define "foundation" as used in rule 11.88(1) and that this definition be identical to the one used by the Department for property taxation.

Memorandum from K. Kaspar, Jr., State of Wisconsin Department of Revenue to J.E. DeYoung (June 20, 1980). The definition of "set upon a foundation" was drafted shortly thereafter. The idea that cement blocks could constitute a foundation for real property suggests that the definition was intended to include various means of support, not just those that are underground.

located on the mobile home owner's property—may constitute personal property and still qualify for the exemption under Wis. Stat. § 70.111(19)(b) even though they may have some weight off their wheels. Thus, any concerns that this personal property exemption has been completely nullified by our interpretation are without merit.

¶ 33. We acknowledge that the statutes in their present form are nearly irreconcilable. Both the majority and the dissent did yeoman work with that which the legislature gave them. However, both fail to take into account co-existing statutes. The court of appeals' majority opinion leads to a nullification of the exemption for personal property created under Wis. Stat. § 70.111(19). Judge Dykman's test, for the most part, would tax all mobile homes as personal property, contrary to the legislative intent of Wis. Stat. § 70.043(1). For this reason, we conclude that our test, which follows the legislature's clear intent, must be adopted. As we have noted, "when a legislative mandate is 'clearly expressed and there is no warrant for alternative construction, a court may not impose its view on what the law should be.' " *Ervin v. City of Kenosha,* 159 Wis. 2d 464, 478, 464 N.W.2d 654 (1991) (citation omitted). We have proceeded in this manner. Nevertheless, given the problems in terms of assessment, the legislature should pay immediate attention to the statutes at issue in this case. *See* Wis. Stat. §§ 13.83(1)(c)1 and 13.93(2)(d) (1999–2000).

¶ 34. Having enumerated the test, we now apply it to the facts of this case. "Where the facts are undisputed, a question of whether a structure is statutorily real or personal property is a question of law." *Pulsfus*

*Poultry Farms v. Town of Leeds*, 149 Wis. 2d 797, 811, 440 N.W.2d 329 (1989). In this case, the stipulated facts reveal that 19 of the 20 representative owners have "some form of stabilizer under the unit, whether it be concrete blocks, cinder blocks or screw jacks . . . ." The use of these support mechanisms effectively took some of the weight of the home off its wheels. The remaining mobile home, which was owned by Robert and Gail Bauer, did not have any stabilizers under it. This mobile home did, however, have additional structures that were caulked to the unit. The additional structures included a 385 square foot screened-in room and a 104 square foot porch. Both structures rested on footings. The Town asserts that the unambiguous text of the statute requires that the Bauers' physically attached addition to their basic unit must be considered for purposes of determining whether the Bauers' mobile home is set upon a foundation. The Town argues that, when this addition is considered, the Bauers' mobile home would not be completely supported by its wheels. We agree with this interpretation.

¶ 35. The court of appeals incorrectly rejected this interpretation, stating:

> [W]hen defining what it means for a mobile home to be "set upon a foundation," § 70.043(1) requires the mobile home to be "off *its* wheels" (emphasis added). It makes no sense to talk about an attached deck or porch being "off its wheels." The plain implication of this language is that the legislature was referring to the "basic unit," which is the only structure that would once have been on wheels.

*Ahrens*, 2000 WI App 268, ¶ 18. Under the definition of mobile home, however, such additions or attachments are considered as part of the mobile home itself. As a result, if this part of the mobile home is resting on some

other means of support than the wheels of the basic unit, the mobile home itself is being supported by means other than the wheels. Thus, on the whole, all twenty of the representative owners had their mobile homes off their wheels and on some other support. The question then remains for what period of time these homes were off their wheels.

¶ 36. On this issue, the representative owners stipulated that they have their mobile homes located on their lots. Similarly, in each of the complaints, the owners admitted that they have their mobile homes located on their lots. These admissions suggest that the mobile homes were situated on the lots and were not moved. There is nothing in the record to suggest otherwise. The only variable with respect to time spent on the lot is the time each owner spends residing in his or her mobile home.[6] Even this information shows that the mobile homes were located on the property for more than a temporary basis. These facts lead to the conclusion that these homes were properly classified and taxed as improvements to real property because the homes were supported by means other than the wheels for more than a temporary basis. For this reason, we need not address whether the taxes levied against these representative owners' mobile homes were unlawful under Wis. Stat. § 74.35. Accordingly, we affirm the court of appeals' decision, which upheld the circuit court's judgment of dismissal on the representative owners' actions.

---

[6] With respect to the representative owners, the record reveals that the Bears, Lot 143, were on their lot for 52 days; the Brueggemans, Lot 82, for 24 days; the Boszkos, Lot 556, for 30 days; the Dahlkes, Lot 59, for 40 days; the Groths, Lot 377, for 4 months; the Heidners, Lot 419, for 40 days; the Obukowiczs, Lot 69, for 72 days; and the Ryans, Lot 97, for 56 days.

## IV

¶ 37. With respect to the disposition of the claims of the nonrepresentative owners, we conclude that remand to the circuit court is appropriate to provide a proper evidentiary determination on whether each of these owners fall within the definition of improvements to real property, as it has been defined in this opinion. Accordingly, we affirm the court of appeals' decision in this respect and remand the actions of the remaining owners for further evidentiary proceedings.

## V

¶ 38. In sum, we affirm the court of appeals' decision. For the representative owners, dismissal is appropriate because the Town properly assessed and taxed these mobile homes as improvements to real property. For the nonrepresentative owners, we remand to the circuit court for further proceedings to determine whether the mobile homes of these owners were properly classified as improvements to real property in light of this opinion.

*By the Court.*—The decision of the courts of appeals is affirmed.

¶ 39. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (*concurring*). I agree with the majority opinion that Wis. Stat. § 70.043 needs legislative attention. No judicial definition of "set upon a foundation" or "off its wheels" or "set upon some other support" is free from difficulties. Nevertheless, in choosing among several unsatisfactory alternatives set forth by the courts, I would adopt the test set forth in the majority opinion in the court of appeals because I think it presents the

fewest problems in application. I would not further complicate the issue, as the majority opinion does, by adding the concepts of "temporary" (majority op. at ¶ 30), "temporary and for a limited time" (majority op. at ¶ 30), "very limited time" (majority op. at ¶ 30), or "temporary basis" (majority op. at ¶ 31) in interpreting the statute.

¶ 40. Moreover, I do not understand how the majority opinion can apply its new test to defeat the claims of 136 plaintiffs without giving these plaintiffs an opportunity to present evidence under the new test.

¶ 41. I am authorized to state that Justice DIANE S. SYKES joins this opinion.